**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

--------------------------------------------------------------------- x
                                            :

In re:                              :     Chapter 11
                                              :
NJ MOBILE HEALTH CARE LLC, *et al.*[1],    :     (Subchapter V)
                                              :
                                              :     Case No. 24-16239 (JKS)
                         Debtors.         :
                                              :     (Jointly Administered)
--------------------------------------------------------------------- x

### DECLARATION OF LOUIS V. GRECO, III, IN RESPONSE TO THAT CERTAIN MOTION OF TRI-STATE MEDICAL HOLDINGS LLC TO COMPEL DEBTOR TO MAKE PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM BY DATE CERTAIN, OR ALTERNATIVELY TO CONVERT DEBTOR'S CASE TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

        I, Louis V. Greco, III, declare, pursuant to section 1746 of Title 28 of the United States Code, as follows:

        1.       I am the Manager of each of NJ Mobile Health Care LLC ("NJMHC"), Lime Line Operations LLC ("Lime Line"), and SSME Services LLC ("SSME Service", and together with NJMHC and Lime Line, the "Debtors"), debtors in the above-captioned jointly administered Chapter 11 Cases (collectively, the "Chapter 11 Cases").

        2.       I am familiar with the matters set forth herein and make this declaration (the "Declaration") in response to that certain motion (the "Motion")[2] [Docket No. 145] filed by Tri-State Medical Holdings LLC ("Tri-State") to compel payment of a certain alleged administrative claim, or alternatively, to convert these Chapter 11 Cases to cases under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

---

[1] The Debtors herein and the last four digits of their respective tax identification number are: (i) NJ Mobile Health Care LLC (9666), (ii) Lime Line Operations LLC (8248), (iii) SSME Services LLC (4127). The Debtors' principal place of business is 575 Corporate Drive, Suite 525, Mahwah, New Jersey 07430.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

## I. Background

3.     On June 20, 2024, each of the Debtors filed voluntary petitions for relief pursuant to Subchapter V of Chapter 11 the Bankruptcy Code commencing the Chapter 11 Cases.

4.     The Debtors operate an emergency and non-emergency medical services and ambulance transportation business in the Northern New Jersey area. The Debtors' services include, among other things: (i) non-emergency medical transportation for patients to healthcare facilities, hospitals, and residential homes, on both a recurring or one-time basis, (ii) emergency medical services and transportation, and (iii) onsite medical support solutions and care for public and special events.

## II. Staffing Agreement with Tri-State

5.     In connection with its proposed plan of reorganization, NJMHC and Tri-State entered that certain *Supplemental Staffing Agreement* (the "Staffing Agreement")[3]. A true and complete copy of the Staffing Agreement is attached hereto as **Exhibit "1"**[4]. In my experience, agreements like the Staffing Agreement are routinely entered in the ordinary course of business by ambulance companies like NJMHC.

6.     In accordance with the Staffing Agreement, Tri-State was to provide certain staffing services to NJMHC. The personnel assigned to NJMHC for staffing purposes were to remain employees at the Tri-State level and Tri-State maintained the sole and exclusive responsibility for the payment of wages to said personnel. Staffing Agreement, §2. Tri-State was then to invoice NJMHC on a weekly basis with said invoices being payable on Sixty (60) day terms. *Id*. at §9, Ex. B.

---

[3] The Motion also references execution of an agreement similar to the Staffing Agreement between Tri-State and non-debtor Mobile Onsite Health Solutions, LLC ("MOS"). MOS is not a debtor in these proceedings, and consequently, any purported amounts owed by MOS to Tri-State are outside the scope of these Chapter 11 Cases.
[4] A copy of the Staffing Agreement was also included as Exhibit "A" to Tri-State's Motion.

7.      As indicated, the Staffing Agreement was entered into by NJMHC as part of its anticipated proposed plan of reorganization. Despite the Staffing Agreement being executed on or around September 15, 2024, services thereunder did not begin until January of 2025.

8.      Following the commencement of services under the Staffing Agreement, certain disagreements arose between NJMHC and Tri-State regarding the quality of services rendered by the personnel provided to NJMHC thereunder as well as the timing of Tri-State's funding of wages and subsequent invoicing of NJMHC. Unfortunately, due to these differences, the Staffing Agreement was terminated on our around April of 2025.

9.      In connection with the disagreements around the timing of wages being paid by Tri-State, and related funding of invoices issued in connection with the same, the Debtors were often left to fund payroll internally, and indeed, have been carrying their employee payroll internally since services under the Staffing Agreement ceased.

10.      Due to Tri-State's failure to abide by the terms of the Staffing Agreement, the Debtors have suffered damages in an undetermined amount, and the Debtors reserve all rights in connection with the same.

## II.      <u>Payment in Connection with Sale of Ambulance</u>

11.      As the Court is aware, the Debtors were previously authorized to sell, free and clear of all liens, claims, and encumbrances, that certain 2018 Ford Transit 250 Type II Ambulance with Vin No. 1FDYR2CM3JKB40807 (the "<u>Ambulance</u>"). *See Order, Pursuant to 11 U.S.C. §§ 105 and 363, Approving the Debtors' Sale of One Ambulance Free and Clear of All Liens, Claims, and Encumbrances*, dated December 18, 2024 [Docket No. 108] (the "<u>Sale Order</u>").

12.     As outlined in its motion for authorization to sell the Ambulance, in or around February of 2019, NJMHC had financed the purchase of the Ambulance with United Leasing, Inc., d/b/a Access Commercial Capital ("United").

13.     Following entry of the Sale Order, the sale of the Ambulance did not close as expeditiously as intended and United raised growing concerns at its lack of payoff with the Debtors.

14.     Consequently, NJMHC, Tri-State, and the initial purchaser of the Ambulance entered that certain *Assignment and Assumption Agreement* and *Novation Agreement*, each dated January 15, 2025, whereby the initial purchaser assigned its rights to purchase the Ambulance in connection with the Sale Order to Tri-State. Copies of the *Assignment and Assumption Agreement* and *Novation Agreement* are attached hereto as **Exhibit "2"**. In furtherance thereof, Tri-State agreed to purchase the Ambulance from NJMHC, in furtherance of the Sale Order, for $72,000.00. *See Assignment and Assumption Agreement*, § 3.

15.     There were subsequent delays in the closing of the sale of the Ambulance to Tri-State due to, as I understand it, the processing of Tri-State's request for funding in connection with its own equipment financing arrangement. United raised further concerns at the continued delay and indicated that it would likely need to proceed with foreclosure on the Ambulance if payment was not imminently forthcoming.

16.     To that end, following discussions between NJMHC and Tri-State, Tri-State agreed to advance certain amounts that would be utilized to satisfy the amounts owed to United, with the same to be reimbursed to Tri-State by NJMHC when Tri-State received the full purchase amount from its equipment financer and was able to fund the full purchase price of the Ambulance. On or

4

around March 3, 2025, Tri-State funded $42,592.94 (the "Advance") which was then used to satisfy the amounts owed to United.

17.     Thereafter there were further delays in connection with Tri-State obtaining the remaining financing it required to fund the full purchase price of the Ambulance, leading to the sale of the same not closing until on or around May 15, 2025.

18.     As indicated above, during this interim period certain disagreements arose between NJMHC and Tri-State in connection with the Staffing Agreement, which included, among other things, disagreements around the funding by Tri-State of employee payroll obligations and the timing of payments of the related invoices issued by Tri-State to NJMHC. In connection with these disagreements, on or around mid-May of 2025 NJMHC was forced to utilize certain of the funds earmarked for repayment of the Advance to ensure timely payment of employee obligations. Such need to use these funds to satisfy the employee obligations, due to in NJMHC's view, Tri-State's failure to abide by the terms of the Staffing Agreement, was contemporaneously communicated to Tri-State, along with NJMHC's assurance that the Advance would be repaid.

## III.    Anticipated Payment of Amounts to Tri-State

19.     Notwithstanding the foregoing, NJMHC is endeavoring to fund the purported amounts owed claimed by Tri-State in full ahead of the hearing currently scheduled on the Motion.

20.     To that end, the Debtors anticipate certain near-term infusions of funds from non-debtor third parties that will be used, in part, as capital infusions that will negate the need for the Staffing Agreement with Tri-State, or a similar arrangement with another third party. A portion of said funds will also be utilized to satisfy, in full, the amounts claimed by Tri-State in the Motion.

21.    The Debtors reserve all rights with respect to the Motion, including, but not limited to, the right to further supplement this Declaration and/or participate in additional briefing in connection with the same.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Executed this 5th day of August 2025 in Mahwah, New Jersey.

*/s/ Louis V. Greco, III*
Louis V. Greco, III
Manager of the Debtors

# Exhibit 1

# SUPPLEMENTAL STAFFING AGREEMENT

This Supplemental Staffing Agreement (hereinafter "Agreement") is entered into on **September 15, 2024**, by and between **Tri-State Medical Holdings LLC** (hereinafter "Agency") and **NJ Mobile HealthCare, LLC**. (hereinafter "Client").

**WHEREAS**, Agency is in the business of recruiting qualified personnel to service as Registered Nurses (specifically, Mobile Intensive Care Nurses / Specialty Care Transport Nurses), Paramedics, Advanced Emergency Medical Technicians, Emergency Medical Technicians, Emergency Medical Responders, Motor Vehicle Operators, other ancillary, healthcare and/or EMS support staff (hereinafter called "personnel") to provide quality patient care to Client; and

**WHEREAS**, Client may be in need of qualified permanent and temporary staff for its medical transportation or patient care purposes;

**THEREFORE**, in consideration of the mutual promises and covenants in this agreement, Agency and Client do hereby agree as follows:

1.  TERM:  The term of this agreement shall be for a period of one year, commencing on **September 15, 2024** and may be extended for additional one-year periods by mutual agreement.  Either party may terminate this agreement at any time, without cause, by giving thirty (30) days prior written notice to the other party.

2.  STATUS OF AGENCY:  All individuals assigned to Client pursuant to this agreement shall, for all purposes under this agreement, be considered employees of Agency only. Agency shall assume sole and exclusive responsibility for the payment of wages to personnel for services performed by them for Client.  Agency shall assume the sole and exclusive responsibility for the payment of wages to individuals for services performed and the withholding of Federal, State and local income taxes, school district income taxes, paying Federal Social Security and Medicare income taxes, unemployment insurance and maintaining worker's compensation coverage in an amount and under such terms as required by New Jersey State Labor Law.  Agency shall provide proof of General Liability Insurance and Professional Liability Insurance for Agency, its agents and employees, with a liability limit of $1,000,000 per occurrence and $3,000,000 aggregate.  Inadequate insurance or inadequate proof of insurance is cause for termination.  Agency shall treat all staff assigned to Client as "Employees" of the Agency and not as "Independent Contractors".  Agency warrants that it is in compliance with all State and Federal laws applicable to the employment of the individuals who are referred to Client.  In order to ensure compliance of the requirements of this section, Client shall have access to Workers' Compensation, Disability Insurance, and Unemployment Insurance.  Any breach of agreement concerning: the "misclassification" of employees to "independent contractor" status, failure to withhold all applicable payroll taxes, assigning staff to client without General Liability Insurance, Professional Liability Insurance and Workers' Compensation Insurance will result in termination of contract.

Agency hereby certifies that the individuals that it supplies to Client as permanent and temporary personnel to assist Client operations are treated by Agency as its employees for

purposes of all taxes, tax withholding obligations or other required contributions that arise out of an employment relationship including, but not limited to the obligation to withhold federal and state income taxes, to pay and withhold taxes required under the Federal Insurance Contributions Act, to pay taxes required under state and local, municipal, or school district.  Agency hereby certifies that it is a member of a Worker's Compensation Program and will maintain its participation in that program.

3.  DOCUMENTATION:   Agency shall provide Client with documentation in a form satisfactory to Client which establishes that agency has, in effect, the required current Workers Compensation and Professional and General Liability insurance.  Agency shall give Client at least ten (10) days written notice prior to cancellation of or changes in coverage for any of the above policies.  Agency shall also provide Client with a completed W-9 form and Clients Supplier Information Data Sheet.

4.  QUALIFICATIONS OF PERSONNEL:  Agency agrees that each employee referred to Client shall be screened and qualified for the position to which employee is referred. Client requires job-related background information on employees in patient care positions, for up to 7-years. **This screening/investigation WILL include, but is not limited to, names and dates of criminal history, records, from counties, federal and other agencies; social security number trace; residential history; OIG: GSA EPLS exclusions: Medicare and Medicaid excluded lists; nationwide sex offender registry; and drug screening.**  Background checks **WILL** include but will not necessarily be limited to confirmation of an individual's identity, review of an individual's criminal conviction record, if any, verification of any license, certificate, or degree required for job performance.  These records will be used to determine eligibility for clinical experiences and practice at Saint Michaels Mobile HealthCare, LLC.   Agency is responsible for guaranteeing that personnel assigned to Client's service meet and adhere to the requirements specified in "Exhibit **A**" attached hereto and incorporated into this agreement.

5.  RIGHT TO DISMISS:   Any employee referred by Agency to Client for a position requiring a certification and who does not possess a current valid certification acceptable by the State of New Jersey Administrative Code 8:40 or who is physically or mentally incapable of performing the duties required by the position where assigned, or who is determined, in good faith, by Client or its designated representatives, to be unqualified for position assigned, shall not be permitted to perform services for Client and Client shall not be required to pay for hours worked by such employee.

Agency authorizes Client and its' employees and representatives to provide any information it deems appropriate regarding Agency and any of its employees, representatives, and agents.  This information may be provided either verbally or in writing.  In addition to authorizing the release of any information, Agency fully waives any rights or claims it has or may have against Client, its agents, employees, or representatives and releases Client and its agents, employees and representatives from any and all liability, claims or damages that may directly or indirectly result from the disclosure or release of any information that could be favorable or unfavorable to employees of Client.

**Agency's operational and credentialing processes shall fully comply with all federal and state occupational safety and health regulations. Agency also addresses clinical performance issues in order to protect patient interests, ensure the quality of care delivered by Agency's healthcare professionals, and to protect client from possible claims.**

6.  CLIENT RULES & REGULATIONS:  While providing patient care service for Client, Agency personnel shall comply with all provisions of licensing law under which they are licensed, with regulations promulgated thereunder and with policies and procedures adopted by client's administration to protect the health and welfare of patients.  It shall be the responsibility of the Client to provide personnel for site specific orientation information related to its rules, regulations, policies and procedures as necessary to Agency for its employees.  The primary methodology will be conducted with New Hire Orientations and staff meeting(s) with incumbent Agency Personnel.

7.  CONTINUITY OF CARE AND SERVICE:  Agency shall use its best efforts to assign the same staff to Client in order to provide maximum **patient** staffing continuity.  **Client will assign duties and clinical care assignments in support of the healthcare professionals' clinical expertise with environmental orientation to the new unit.** Agency shall have supervisors available twenty-four (24) hours per day, seven (7) days per week to perform its duties.  Agency shall provide personnel with orientation information (as outlined in #7 above), disciplinary action of staff when necessary, and oversees agency compliance with screening of applicants.  Agency shall provide proof of annual competencies and evaluations for each employee referred.  **Annual competencies** will include, but not limited to, personnel qualifications of skill and age-related competencies, **universal precautions, bloodborne pathogens, infection control,** pain, restraints, HIPAA, **patients' bill of rights,** etc.

8.  NON-SOLICITATION: Client, as well as any affiliates agree, during the term of this Agreement, and for a period of twenty-four (24) months following the termination of this Agreement, they will not solicit, hire or offer employment to Agency's employees or representatives directly or indirectly or through another agency.

9.  PAYMENT TERMS:  See "Exhibit B"

10. COMPENSATION:  Agency shall bill Client for services in accordance with the schedule of rates appended hereto in "Exhibit **B**".  The schedule of rates may only be amended by mutual agreement of both parties and upon thirty (30) days written notice and will be reviewed annually.  Before leaving the service, **and/or overtime** must be documented by the Agency AND approved in writing by the client's management.

11. This agreement, its validity, performance and all other questions arising hereunder, shall be governed by and construed in accordance with the laws in the State of New Jersey.

12. Agency confirms that it has not been excluded by the Federal government from participation in any governmental programs nor, to the best of Agency's knowledge, has agency or any of its employees been proposed for exclusion.  Agency agrees to notify the Client's Purchasing Manager immediately upon agency receiving written or verbal

notification that agency is proposed for exclusion from any governmental health care program.

13. COMMUNICATION PROTOCOL: The Saint Michaels Mobile HealthCare, LLC. Purchasing Department will be responsible for administering this contract. Any changes or amendments to this contract must be coordinated with a buyer from this department. Authorized changes or modification(s) to any part of this agreement must be in writing and signed by authorized personnel from Agency and Client.

14. Based on periodic audits, Client reserves the right to refuse or discontinue the service of any individual, which in the opinion of Client is not performing. The Coordinator will phone unfavorable comments and/or concerns regarding personnel performance to the Shift Supervisor. Rationale for requesting a person not to return will be discussed with the staff member at the Client's request.

    In the event a healthcare professional placed by Agency accepts permanent employment with Client, Client shall have no further financial obligation to Agency, provided the healthcare professional completes the current assignment before beginning permanent employment.

15. Agency must comply with the Americans with Disabilities Act of 1990 (ADA). All qualified individuals with a disability who can perform the "essential functions" of a job, with or without reasonable accommodation by the employer, are protected by ADA employment provisions.

16. PARKING: The Client shall provide parking, at no cost, to all Agency employees at the client's facility.

17. SITE VISITS: Client reserves the right to make periodic site visits of Agency. All site visits and evaluations shall be performed in such a manner as will not unduly interfere with or delay ongoing work. These evaluations may involve inspection of employee personnel records, monthly state comp reports, quarterly payroll records, and other financial records.

18. PROTECTED HEALTH INFORMATION: To the extent that the Agency and/or supplemental staff comes into contact with identifiable patient health information, Agency and/or supplemental staff agrees it will maintain such information to meet all mandatory federal, state and local regulations, including JCAHO and HIPAA regulations, existing and future. **Client will verify the identity and credentials of each Healthcare Professional by a visual check of the Healthcare Professional's photo identification and professional license or certification.**

19. This agreement specifies that the Client retains professional and administrative responsibility for the services rendered. The **Agency,** when acting as a consultant, shall apprise the administrator of recommendations, plans for implementation and continuing assessment through dated and signed reports which shall be retained by the administrator for follow-up action and evaluation of performance.

20. PARTIAL INVALIDITY:  In the event any provision of this agreement is found to be legally invalid or unenforceable, those provisions shall be revised to the degree allowed by law or shall be severed, and the remaining provisions of this agreement shall remain in full force and effect.

21. INDEMNIFICATION: Client and Agency agree to indemnify and hold each other harmless against any and all claims, losses, damage or expenses arising from the sole, negligent, or willful misconduct of their respective representatives.

*Rest of this page intentionally left blank*

In consideration of the promises contained herein, the parties to hereby execute this agreement.

CLIENT                                                          AGENCY NAME

NJ MOBILE HEALTHCARE LLC.                    ==TRI-STATE   MEDICAL   HOLDINGS==
                                                                 LLC

By: _____                     By: _____
                                                                        Adam Deutsch

Title: _CEO_____                       Title: ___President_____

E-Mail: _louis.greco@njmhc.com_            E-Mail:_adeutsch@tristatemedgroup.com_

Date: _09/16/2024_____            Date: ___09/15/24_____

_Louis Greco_____
Contact Person Name

_201-660-1600_____
Contact Person Phone #

_louis.greco@njmhc.com_____
Contact E-Mail

_Rick Rubenstein_____
Accounts Receivable Contact Person

_201-660-1600_____
Accounts Receivable Person Phone #

_rick.rubenstein@njmhc.com_____
Accounts Receivable Person E-Mail

**EXHIBIT A**
**Personnel Requirements**

**Emergency Medical Technician**

**Requirements:**
- Valid EMT Certification from NJ, NY, DE, DC, MD, NC, PA, VA or WV
- Must have a valid driver's license
- Must possess a valid CPR card
- High School Diploma or GED
- Preferred two years' experience in a 9-1-1 or emergency EMS setting
- Certification in Pre-Hospital Trauma Life Support (PHTLS) or International Trauma Life Support (ITLS).
- ICS 100 and 200
- IS 700 and 800 – current versions
- Hazardous Materials Awareness
- WMD / CBRNE Awareness
- CEVO 4 certificate
- Annual competencies in Blood Borne Pathogens, Hazard Communications, and Respiratory N95 Fit Testing
- Successful clearance from criminal background check
- Negative Drug / illicit substances screening

**Responsibilities:**
- Responds to instructions from emergency medical dispatchers and performs assignments in a timely manner.
- Operates emergency vehicles in accordance with regulations and company policy.
- Assures proper stocking, re-stocking and maintenance of medical supplies and equipment.
- Provides accurate and timely written and typed communication on patient disposition.
- Provides patient assessment, treatment and transport within applicable regulations.
- Attends company mandated staff sessions.

**EXHIBIT B**
**Statement of Work and Pricing Proposal**
**NJ Mobile HealthCare**

1. The Client will provide staffing for BLS ambulance services consisting of two Emergency Medical Technicians per ambulance / unit.
2. Each Operational Hour, as outlined in 1, will be charged at a rate of $75.00
3. Initial Staffing will consist of:
   a. One (1) Twenty-Four Hour, 365 Days a year Basic Life Support Ambulance
4. Agency shall bill NJ Mobile HealthCare on Net 60 Day Terms.  Invoicing shall be submitted weekly.
5. If NJ Mobile HealthCare requires additional Basic Life Support Ambulance / Unit staffing, an additional $75.00 per hour will be charged.

# **<u>Exhibit 2</u>**

## <u>ASSIGNMENT AND ASSUMPTION AGREEMENT</u>

This Assignment and Assumption Agreement (the "<u>Agreement</u>"), dated January 15, 2025 (the "<u>Effective Date</u>"), is entered into by and between Specialty Hearse & Ambulance Sales Corp. ("<u>Assignor</u>"), Tri-State Medical Holdings LLC ("<u>Assignee</u>"), and New Jersey Mobile HealthCare LLC ("<u>NJMHC</u>").

      **WHEREAS**, on June 20, 2024, NJMHC filed a voluntary petition for relief pursuant to Subchapter V of Chapter 11 of Title 11 of the United States Code, commencing the bankruptcy matter *In re NJ Mobile Health Care LLC*, Case No. 24-16239 (JKS) (the "<u>NJMHC Bankruptcy</u>") in the United States Bankruptcy Court for the District of New Jersey (the "<u>Bankruptcy Court</u>"); and

      **WHEREAS**, Assignor and NJMHC previously entered into that certain *Purchase Agreement*, dated November 15, 2024 (the "<u>Purchase Agreement</u>"), pursuant to which Assignor agreed to, among other things, purchase from NJMHC that certain 2018 Ford Transit 250 Type II Ambulance, Vin No. 1FDYR2CM3JKB40807 (the "<u>Ambulance</u>"), for $60,000.00; and

      **WHEREAS**, the Purchase Agreement and sale of the Ambulance was subsequently approved by the Bankruptcy Court pursuant to that certain *Order, Pursuant to 11 U.S.C. §§ 105 and 363, Approving the Debtors' sale of One Ambulance Free and Clear of All Liens, Claims, and Encumbrances*, dated December 18, 2024 (the "<u>Sale Order</u>"); and

      **WHEREAS**, Assignor desires to assign all of its rights under the Purchase Agreement, as approved by the Sale Order, to Assignee; and

      **WHEREAS**, Assignee desires to assume such assignment from Assignor pursuant to the terms hereof.

      **NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

      1.    **<u>Recitals Incorporated</u>**. The recitals and precatory phrases and paragraphs set forth above are hereby incorporated in full and made a part of this Agreement.

      2.    **<u>Assignment</u>**. Assignor hereby transfers and assigns to Assignee all of Assignor's right, title, and interest in the Purchase Agreement, as approved by the Sale Order. Copies of each of the Purchase Agreement and Sale Order, both of which remain in full force and effect as of the Effective Date, are attached hereto as <u>Exhibits</u> "<u>A</u>" and "<u>B</u>", respectively, and are incorporated herein by reference. Such assignment (the "<u>Assignment</u>") shall be irrevocable, and shall include all of Assignor's rights and obligations as set forth in the Purchase Agreement as of the Effective Date.

      3.    **<u>Assumption</u>**. Assignee hereby accepts the Assignment from Assignor, including all of Assignor's rights and obligations as set forth in the Purchase Agreement as of the Effective Date. Except as specifically outlined herein, Assignee assumes and agrees to perform all of the

obligations and covenants of Assignor as set forth in the Purchase Agreement. In furtherance thereof, Assignee agrees to pay to NJMHC $72,000.00 (the "Purchase Price") in exchange for the Ambulance. Said Purchase Price shall be provided by Assigned to NJMHC upon execution of this Agreement and shall be delivered by Assignee in accordance with those certain wire instructions provided under separate cover by NJMHC's attorneys Klestadt Winters Jureller Southard & Stevens, LLP.

4.   **Novation**. The parties hereto agree to simultaneously enter into the novation agreement (the "Novation") attached hereto as **Exhibit "C"** and incorporated herein by this reference. The Novation shall be executed by the Assignor, the Assignee, and NJMHC. This Agreement shall not become effective or enforceable in any way unless and until the Novation is fully executed by all of the parties thereto. Once the Novation and this Agreement are both fully executed, the Assignor shall be fully released from its obligations under the Purchase Agreement and Sale Order, and as such, no longer liable to NJMHC with respect thereto, except as specifically outlined herein.

5.   **Refund of Deposit**. Upon execution of this Agreement and receipt of the Purchase Price from Assignee, NJMHC shall cause the refunding to Assignor of the previous $6,000.00 deposit provided to NJMHC by Assignor. Such refund shall be delivered by NJMHC in accordance with those certain payment instructions provided by Assignor under separate cover. In addition, upon execution of this Agreement and  its receipt of the Purchase Price, NJMHC shall cause the further payment of $7,620.27 to Assignor, upon receipt of which, Assignor shall: (i) release that certain ambulance (NJMHC Fleet No. 5553; Vin No. 1GB3C0CG0CF220337) to NJMHC, and (ii) cause its affiliate, Specialty Fleet Services, LLC to take all steps necessary, including the filing of a Notice of Withdrawal, to withdraw and waive its proof of claim filed as Claim Number 9 against NJMHC in the NJMHC Bankruptcy.

6.   **Representations and Warranties**.

a.   Mutual Representations and Warranties.  Each party hereby represents and warrants to the other party as follows: (i) it is a validly existing organization in good standing under the laws of the state in which it was organized; and (ii) it has the full right to enter into this Agreement and bound by all of the terms set forth herein without violating any applicable law, rule, or regulation.

b.   Representation and Warranties of Assignor. Assignor additionally represents and warrants to Assignee as follows: (i) there is no breach or default by Assignor under the Purchase Agreement, and Assignor is in full compliance with all of its terms up through the Effective Date; and (ii) it is the sole owner of all of the rights granted to Assignee hereunder, free and clear of any lien, claim, threatened claim, security interest, or other encumbrance of any kind.

c.   Representation and Warranties of Assignee. Assignee additionally represents and warrants to Assignor that it will dutifully fulfill all of the obligations assumed by it pursuant to the Purchase Agreement to the best of its ability and in a timely manner pursuant to the Purchase Agreement.

2

7.    **Indemnification**.  Each party shall indemnify, defend, and hold harmless the other party, along with such other party's officers, directors, agents, employees, parents, affiliates, successors-in-interest and permitted assigns, from and against any loss, cost, expense, liability, fine, deficiency, claim, action, judgment, settlement, interest, award, penalty, injury, or damage of any kind, including without limitation reasonable outside attorneys' fees and related costs, to the extent caused by its breach hereof (including without limitation any representation or warranty set forth herein), and/or its negligence, willful misconduct, or illegal act.

8.    **Cumulative Remedies**. Other than with respect to the indemnification rights as set forth above, the rights and remedies provided herein are cumulative (*i.e.*, not exclusive). As such, the exercise by either party of any right or remedy granted hereunder does not preclude the exercise of any other right or remedy now or hereafter available at law or in equity by such party.

9.    **Equitable Remedies**. Each party acknowledges and agrees that a breach or threatened breach of any obligations hereunder by one party may cause irreparable harm to the other party for which monetary damages may not be an adequate remedy. As such, each party shall be entitled to seek equitable relief (including without limitation an injunction) in order to enforce the terms hereof.

10.    **Severability**. If any term hereof is found to be invalid, illegal, or unenforceable in any way, such invalidity, illegality or unenforceability shall not affect any other term hereof.

11.    **Counterparts**. This Agreement may be executed in counterparts, each of which shall be deemed an original, and together which shall constitute one and the same instrument.

12.    **Entire Agreement**. This Agreement, together with the Exhibits attached hereto and incorporated herein, sets forth the entire agreement between the parties with respect to the subject matter hereof. As such, this Agreement shall supersede and replace any and all prior and contemporaneous communications (whether written or oral) of any kind or nature with respect to the subject matter contained herein.

*Signature Page Follows*

3

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed as of the date first above written.

**ASSIGNOR**                                          **ASSIGNEE**

SPECIALTY HEARSE & AMBULANCE          TRI-STATE MEDICAL HOLDINGS LLC
SALES CORP.


By: _____          By: _____
Name: John Scott O'Neill              Name: Adam Deutsch
Title: President                      Title: President

Read and Agreed to:

NJ MOBILE HEALTHCARE LLC


By: _____
Name: Louis V. Greco, III
Title: Manager

4

# <u>Exhibit A</u>

## PURCHASE AGREEMENT

Be it known that Specialty Hearse & Ambulance Sales Corp. (60 Engineers Lane, East Farmingdale, New York 11735 (hereinafter "PURCHASER") has agreed to purchase from NJ Mobile Health Care LLC (575 Corporate Dr., Suite 525, Mahwah, NJ 07430), (hereinafter "SELLER") for $60,000.00 (Sixty Thousand Dollars) the following described items (sometimes referred to collectively herein as the "Goods"):

Model - 2018 Ford Transit 250 Type II Ambulance
Vin# -1FDYR2CM3JKB40807

1.  Title to and ownership of vehicles will not pass from SELLER to PURCHASER until full payment is made. Payment will be in the form of a certified check or wire transfer. PURCHASER shall pay ten (10%) percent of the sale price listed herein as a non-refundable downpayment, which shall be immediately delivered by PURCHASER upon execution of this agreement (the "Downpayment"). The Downpayment shall be delivered by PURCHASER in accordance with those certain wire instructions provided under separate cover by SELLER'S attorneys Klestadt Winters Jureller Southard & Stevens, LLP ("KWJSS") and shall be placed and held in KWJSS' escrow account pending closing of the sale contemplated herein and shall be credited against the purchase price in favor of PURCHASER at closing.

2.  Release of final payment by PURCHASER to SELLER is considered final acceptance by PURCHASER and any issues or concerns regarding the condition of vehicles are deemed a closed matter and PURCHASER agrees that it shall have no claims against the SELLER.

3.  Upon release of final payment by PURCHASER to SELLER, the affiliate of the PURCHASER, Specialty Fleet Services, LLC, shall take all steps necessary, including the filing of a notice of withdrawal, withdrawing and waiving its proof of claim filed as claim number 9 against SELLER in The NJMHC Bankruptcy (defined below).

4.  Upon release of final payment by PURCHASER to SELLER, PURCHASER shall release ambulance NJMHC fleet number 5553, vin number 1GB3C0CG0CF220337 to SELLER.

5.  The vehicles are sold as is, with no warranties expressed or implied. PURCHASER agrees that the vehicles are taken in "as is" condition with no warranties either express or implied. PURCHASER acknowledges that a manufacturer's authorized service facility should service the vehicles and certify them before placing them in service. It is the PURCHASER's responsibility to make certain that those persons using this apparatus/equipment may do so safely and are properly trained in its use.

6.  EXCEPT AS SET FORTH HEREIN, SELLER MAKES NO WARRANTY TO PURCHASER WITH RESPECT TO THE GOODS, AND PURCHASER DISCLAIMS

ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

7. Limitation of Liability. In no event shall SELLER be liable for any special, indirect, incidental or consequential damages arising out of or connected with this Agreement or the Goods, regardless of whether a claim is based on contract, tort, strict liability, or otherwise; nor shall PURCHASER's damages exceed the amount of the purchase price of the Goods.

8. The parties further agree that the risk of loss with regard to these vehicles shall pass from SELLER to PURCHASER upon the final delivery and receipt of payment. PURCHASER acknowledges that it will be responsible to add the vehicle to its vehicle and liability insurance policies before delivery. PURCHASER agrees to indemnify, hold harmless and defend SELLER with regard to any causes of action that may arise from the use and operation of the vehicles after the delivery of possession to PURCHASER.

9. Miscellaneous. This Agreement shall be construed and enforced in accordance with the laws of the State of New Jersey. The parties agree that with regard to any cause of action arising from this Agreement that they will submit to the exclusive jurisdiction and venue of the United States Bankruptcy Court for the District of New Jersey.

10. PURCHASER expressly acknowledges that on June 20, 2024, SELLER filed a voluntary petition for relief pursuant to Subchapter V of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing the bankruptcy matter *In re NJ Mobile Health Care LLC*, Case No. 24-16239 (JKS) (the "NJMHC Bankruptcy") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). PURCHASER further acknowledges that SELLER'S affiliates, Lime Line Operations LLC and SSME Services LLC, also filed voluntary petitions for relief pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code, Case Numbers 24-16240 (JKS) and 24-16241 (JKS), respectively (each of the cases together, the "Chapter 11 Cases"), in the Bankruptcy Court. PURCHASER further acknowledges that each of the Chapter 11 Cases are currently pending before the Bankruptcy Court.

11. PURCHASER further acknowledges that notwithstanding anything contained in the forgoing paragraphs, the transaction contemplated herein by and between PURCHASER and SELLER is entirely contingent upon and subject to the entry of a final order of the Bankruptcy Court in the NJMHC Bankruptcy specifically authorizing and approving the transaction outlined herein. Following execution of this agreement and receipt of the Downpayment, SELLER shall expeditiously proceed to seek the Bankruptcy Court approval required herein.

*[Signatures page follows]*

**NJ MOBILE HEALTH CARE LLC
(SELLER)**

By:_____
Name: Louis V. Greco III
Title: Manager

**SPECIALTY HEARSE & AMBULANCE
SALES CORP.
(PURCHASER)**

By:_____
Name: John Scott O'Neill
Title: President

DATE: 11/15/2024

DATE: 11-15-24

3

# **<u>Exhibit B</u>**



---

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
Andrew C. Brown (admitted *pro hac vice*)
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245

*Attorneys for the Debtors and Debtors-in-Possession*

---

In re:

NJ MOBILE HEALTH CARE LLC, *et al.*[1],

               Debtors.

---

**Order Filed on December 18, 2024
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

Chapter 11

(Subchapter V)

Case No. 24-16239 (JKS)

(Jointly Administered)

Judge: John K. Sherwood

---

## ORDER, PURSUANT TO 11 U.S.C. §§ 105 AND 363, APPROVING THE DEBTORS' SALE OF ONE AMBULANCE FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES

      The relief set forth on the following pages, numbering two (2) through five (5), is hereby

**ORDERED**.

**DATED: December 18, 2024**

_____

Honorable John K. Sherwood
United States Bankruptcy Court

---

[1] The Debtors herein and the last four digits of their respective tax identification number are: (i) NJ Mobile Health Care LLC (9666), (ii) Lime Line Operations LLC (8248), (iii) SSME Services LLC (4127). The Debtors' principal place of business is 575 Corporate Drive, Suite 525, Mahwah, New Jersey 07430.

Upon consideration of the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") for entry of an order authorizing the Debtors to sell their Ambulance (as defined below), pursuant to Sections 105 and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 6004-1 of the Local Bankruptcy Rules for the District of New Jersey (the "<u>Local Rules</u>"), free and clear of all liens, claims, and encumbrances; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and notice of the Motion being sufficient under the circumstances; and it appearing that no other or further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, and creditors; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.       The Motion is **GRANTED** as set forth herein.

2.       The Debtors are hereby authorized to sell the 2018 Ford Transit 250 Type II Ambulance with Vin No. 1FDYR2CM3JKB40807 (the "<u>Ambulance</u>") to Specialty Hearse & Ambulance Sales Corp.  ("<u>Purchaser</u>") for the purchase price of $60,000.00 (the "<u>Purchase Price</u>") free and clear of all liens, claims, and encumbrances pursuant to Sections 105 and 363(b) and (f) of the Bankruptcy Code, Rule 6004 of the Bankruptcy Rules, and Rule 6004-1 of the Local Rule,

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2

all as more fully set forth in that certain *Purchase Agreement* dated November 15, 2024, and

attached to the Motion as <u>Exhibit "C"</u> (the "<u>Agreement</u>"), which Agreement is hereby approved.

3. Except as otherwise expressly permitted by the Agreement and/or this Order, upon

consummation of the transaction contemplated by the Agreement, the Ambulance shall be

transferred to the Purchaser free and clear of all liens, claims and encumbrances, and any and all

creditors, governmental, tax, and regulatory authorities holding any and all claims or liens in, on

or against the Ambulance (whether legal or equitable, secured or unsecured, matured or unmatured,

contingent or non-contingent), or arising under, in connection with, or in any way relating to the

Ambulance prior to the sale, hereby are forever barred, estopped and permanently enjoined from

asserting against the Purchaser or its successors or assigns, its property, or the Ambulance, such

persons' or entities' claims in and on the Ambulance, with all such claims to attach to the proceeds

of sale with the same force and effect they had against the Ambulance.

4. Each creditor holding a lien, claim or encumbrance on or against the Ambulance is

authorized and directed to promptly execute and deliver such documents and take all other actions

as may be reasonably requested by the Debtors or Purchaser to evidence the release of its liens,

claims or encumbrances in and on the Ambulance.

5. This Order is and shall be binding upon and govern the acts of all entities, including,

without limitation, all filing agents, filing officers, title agents, title companies, recorders of

mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental

departments, secretaries of state, federal, state, and local officials, and all other persons and entities

who may be required by operation of law, the duties of their office, or contract, to accept, file,

register or otherwise record or release any documents or instruments, or who may be required to

report or insure any title or state of title in or to the Ambulance.  Each and every federal, state and

local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transaction contemplated by the Agreement.

6.      The sale of the Ambulance to Purchaser approved herein was undertaken by the Purchaser in good faith, and therefore, the Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

7.      Prior to closing of the sale, the Debtors shall request an updated payoff quote ("Updated Payoff Quote") from secured lienholder, United Leasing, Inc., d/b/a Access Commercial Capital ("United"). As soon as practicable after the closing of the sale on the Ambulance, the Debtors will remit the amount necessary to satisfy the Updated Payoff Quote provided by United from the sale proceeds to United, in full and final satisfaction of United's claim without the need of any further order from the Court.

8.      For the avoidance of doubt, the notice provided by the Debtors of the Motion is hereby deemed sufficient under the circumstances and, to the extent applicable, the requirements of Bankruptcy Rule 2002 are deemed satisfied.

9.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or is otherwise waived.

10.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

11.     This Order shall be effective immediately upon entry, notwithstanding anything to the contrary in the Bankruptcy Rules or Local Rules. For the avoidance of doubt, the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

4

12.     This Court shall retain exclusive jurisdiction to hear and decide any and all disputes related to or arising from the implementation, interpretation or enforcement of this Order.

# **<u>Exhibit C</u>**

## NOVATION AGREEMENT

This Novation (the "Novation"), dated January 15, 2025, is entered into by and between Specialty Hearse & Ambulance Sales Corp. ("Assignor"), Tri-State Medical Holdings LLC ("Assignee"), and New Jersey Mobile HealthCare LLC ("NJMHC"). The Novation is entered into in connection with and in furtherance of that certain *Assignment and Assumption Agreement*, dated as of the date hereof (the "Assignment Agreement"), and to which this Novation is attached and therein incorporated. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Assignment Agreement.

1.      **Assigned Contract**. Assignor and NJMHC are parties to the Purchase Agreement, as the same was approved by the Sale Order entered by the Bankruptcy Court in the NJMHC Bankruptcy. Copies of the Purchase Agreement and Sale Order are attached to the Assignment Agreement as Exhibits "A" and "B", respectively.

2.      **Novation**. The parties hereto agree that with respect to the Purchase Agreement, Assignee shall be substituted for Assignor. As such, Assignee shall acquire all of the rights and obligations of Assignor as set forth therein as of the Effective Date.

3.      **Consideration**. The transfer of rights and delegation of duties as set forth above shall serve as each party's respective consideration to the other party.

4.      **Release**. Despite anything set forth to the contrary in the Purchase Agreement, and subject to the terms hereof and the terms of the Assignment Agreement, Assignee fully releases and forever discharges Assignor, along with Assignor's employees, agents, officers, directors, shareholders, affiliates, and representatives (collectively, the "Released Parties") from (i) Assignor's performance obligations as set forth in the Purchase Agreement; and (ii) all claims, threatened claims, suits, debts, expenses, costs, deficiencies, damages, or demands that NJMHC may have against any of the Released Parties to the extent arising out of the non-fulfillment of performance obligations set forth in the Purchase Agreement.

5.      **Acknowledgement by NJMHC**. NJMHC acknowledges and agrees that Assignee is Assignor's successor-in-interest in and to the Purchase Agreement. As such, Assignee is entitled to all right, title and interest of Assignor in and to the Purchase Agreement. Assignee and Non-Assigning Party shall be fully bound by the terms of the Purchase Agreement as if the Assignee were named as a party thereto.

*Signature Page Follows*

**IN WITNESS WHEREOF**, the parties hereto have caused this Novation to be executed as of the date first above written.

ASSIGNOR                                        ASSIGNEE

SPECIALTY HEARSE & AMBULANCE          TRI-STATE MEDICAL HOLDINGS LLC
SALES CORP.

By: _____          By: _____
Name: John Scott O'Neill                Name: Adam Deutsch
Title: President                        Title:   President

Read and Agreed to:

NJ MOBILE HEALTHCARE LLC

By: _____
Name: Louis V. Greco, III
Title: Manager

2