**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

------------------------------------------------------------------ x
|                                      | :  |                          |
| In re:                               | :  | Chapter 11               |
|                                      | :  |                          |
| NJ MOBILE HEALTH CARE LLC, *et al.*[1], | :  | (Subchapter V)         |
|                                      | :  |                          |
|                                      | :  | Case No. 24-16239 (JKS)  |
|                    Debtors.          | :  |                          |
|                                      | :  | (Jointly Administered)   |
------------------------------------------------------------------ x

## SMALL BUSINESS DEBTORS' THIRD AMENDED PLAN OF REORGANIZATION

This Third Amended Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of the above-captioned Debtors, and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY NOVEMBER 11, 2025.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY NOVEMBER 11, 2025. THE BALLOT MUST BE MAILED TO THE DEBTORS' COUNSEL'S ADDRESS: KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP, 200 WEST 41st STREET, 17th FLOOR, NEW YORK, NEW YORK 10036, ATTN: TRACY L. KLESTADT & ANDREW C. BROWN.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR NOVEMBER 18, 2025, AT 10:00 A.M. (EST) IN COURTROOM NO. 3D AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY, 50 WALNUT STREET, 3rd FLOOR, NEWARK, NEW JERSEY, 07102.**

---

[1] The Debtors herein and the last four digits of their respective tax identification number are: (i) NJ Mobile Health Care LLC (9666), (ii) Lime Line Operations LLC (8248), (iii) SSME Services LLC (4127). The Debtors' principal place of business is 575 Corporate Drive, Suite 525, Mahwah, New Jersey 07430.

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

October 14, 2025

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
Tracy L. Klestadt
Andrew C. Brown (admitted *pro hac vice*)
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: tklestadt@klestadt.com
　　　　abrown@klestadt.com

*Attorneys for the Debtors and Debtors-in-Possession*

## <u>TABLE OF CONTENTS</u>

SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS ..................................1

I.      Overview of Go-Forward Operations ..........................................................................1

II.     Proposed Treatment of Creditors .............................................................................1

ARTICLE 1: HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR.....................1

    1.1.  Nature of the Debtors' Business ...........................................................................1

    1.2.  History of Business Operations of the Debtor ..........................................................1

    1.3.  Filing of the Debtors' Chapter 11 Cases ................................................................2

    1.4.  Legal Structure and Ownership ...........................................................................2

    1.5.  Debtors' Assets................................................................................................2

    1.6.  Debtors' Liabilities............................................................................................2

    1.7.  Current and Historical Financial Conditions ...........................................................2

    1.8.  Events Leading to the Filing of the Bankruptcy Case ...............................................2

    1.9.  Significant Events During the Bankruptcy Case ......................................................3

    1.10. Projected Recovery of Avoidable Transfers............................................................4

ARTICLE 2: THE PLAN ...................................................................................................4

    2.1.  Unclassified Claims ..........................................................................................4

        A.  Administrative Expenses ..............................................................................4

        B.  Priority Tax Claims .....................................................................................6

    2.2.  Classes of Claims and Equity Interests ..................................................................7

        A.  Classes of Secured Claims............................................................................7

        B.  Classes of Priority Unsecured Claims.............................................................10

C.  Classes of General Unsecured Claims ...........................................................11

D.  Class of Equity Interest Holders ..............................................................12

2.3.  Estimated Number and Amount of Claims Objections ...............................................12

2.4.  Treatment of Executory Contracts and Unexpired Leases ........................................13

A.  Real Estate Lease Agreement with Zohar Zisapel Properties, Inc. ......................13

2.5.  Means for Implementation of the Plan ..................................................................13

2.6.  Substantive Consolidation for Plan Distribution Purposes Only .............................14

2.7.  Duties and Rights of Disbursing Agent; Distributions and Unclaimed Payments....15

2.8.  Post-Confirmation Management ...........................................................................15

2.9.  Tax Consequences of the Plan ............................................................................16

2.10. Projections in Support of Debtors' Ability to Make Payments Under the Proposed Plan ....................................................................................................................16

ARTICLE 3: FEASIBILITY OF PLAN ..........................................................................16

3.1.  Ability to Initially Fund Plan ............................................................................16

3.2.  Ability to Make Future Plan Payments and Operate Without Further Reorganization ....................................................................................................16

ARTICLE 4: LIQUIDATION ANALYSIS ........................................................................17

ARTICLE 5: DISCHARGE ..........................................................................................17

ARTICLE 6: GENERAL PROVISIONS .........................................................................17

6.1.  Title to Assets ..................................................................................................17

6.2.  Binding Effect ..................................................................................................18

6.3.  Severability ......................................................................................................18

6.4.   Retention of Jurisdiction by the Bankruptcy Code ....................................................18

6.5.   Captions ....................................................................................................................18

6.6.   Modification of Plan ..................................................................................................18

6.7.   Final Decree ..............................................................................................................18

ARTICLE 7: EVENTS OF DEFAULT ..................................................................................19

ARTICLE 8: ATTACHMENTS ..............................................................................................19

ARTICLE 9: FREQUENTLY ASKED QUESTIONS.............................................................20

ARTICLE 10: DEFINITIONS .................................................................................................21

10.1. The Definitions .........................................................................................................21

10.2. Administrative Claimant ...........................................................................................21

10.3. Administrative Convenience Class ...........................................................................21

10.4. Administrative Expense .............................................................................................21

10.5. Administrative Tax Claim..........................................................................................22

10.6. Allowed Claim ...........................................................................................................22

10.7. Allowed Priority Tax Claim.......................................................................................22

10.8. Allowed Secured Claim .............................................................................................22

10.9. Allowed Unsecured Claim .........................................................................................22

10.10.  Bankruptcy Code or Code.......................................................................................22

10.11.  Bankruptcy Court....................................................................................................22

10.12.  Bankruptcy Rules....................................................................................................22

10.13.  Cash.........................................................................................................................22

10.14.  Chapter 11 Cases.....................................................................................................22

10.15.  Claim.......................................................................................................................22

10.16.  Class .......................................................................................................... 23

10.17.  Confirmation ............................................................................................... 23

10.18.  Confirmation Date ....................................................................................... 23

10.19.  Confirmation Hearing .................................................................................. 23

10.20.  Confirmation Order ..................................................................................... 23

10.21.  Creditor ....................................................................................................... 23

10.22.  Debtors and Debtors-in-Possession ............................................................ 23

10.23.  Disputed Claim ........................................................................................... 23

10.24.  Distributions ............................................................................................... 23

10.25.  Effective Date ............................................................................................. 23

10.26.  Equity Interest ............................................................................................ 23

10.27.  Executory Contracts .................................................................................... 23

10.28.  Final Order .................................................................................................. 24

10.29.  IRC .............................................................................................................. 24

10.30.  Petition Date ............................................................................................... 24

10.31.  Plan ............................................................................................................. 24

10.32.  Priority Tax Claim ...................................................................................... 24

10.33.  Reorganized Debtors ................................................................................... 24

10.34.  Schedules .................................................................................................... 24

10.35.  Secured Creditors ....................................................................................... 24

10.36.  Trustee ........................................................................................................ 24

10.37.  Unsecured Creditor ..................................................................................... 24

**SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS**

I. Overview of Go-Forward Operations

As outlined below, the Debtors[2] have reached an agreement with third party non-debtor Mobile OnSite Health Solutions LLC ("MOS") whereby Lime Line will provide staffing and management services to MOS. Lime Line will issue monthly invoices to MOS in connection with said staffing and management services that will be due and payable by MOS immediately upon receipt. Through this arrangement, the Debtors anticipate sufficient additional and immediate monthly revenue which will aid in both (i) increasing their current operational capacities, thereby generating the increased go-forward revenue which will be utilized, in part, to fund the Plan payments to Creditors outlined herein, and (ii) funding NJMHC's operations during the period between NJMHC's accounts receivable generation and ultimate collection on the same.

As also outlined below, it is the Debtors' intention to effectuate their substantive consolidation, for distribution purposes only, via confirmation of the Plan.

II. Proposed Treatment of Creditors

Allowed Administrative Claims, Priority Tax Claims, and Claims in Class 1, 2(a)-(c), 3, 4, 5, 6, 7, and 8 are to be treated in accordance with Article 2, Sections 2.1 and 2.2.

**ARTICLE 1**
**HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR**

**1.1.        Nature of the Debtors' Business**

The Debtors operate an emergency and non-emergency medical services and ambulance transportation business in the Northern New Jersey area. The Debtors' services include, among other things: (i) non-emergency medical transportation for patients to/from healthcare facilities, hospitals, and residential homes, on both a recurring or one-time basis, (ii) emergency medical services and transportation, and (iii) onsite medical support solutions and care for public and special events.

**1.2.        History of Business Operations of the Debtor**

NJ Mobile Health Care LLC ("NJMHC") was formed in 2014 and has since been serving the communities of the northern New Jersey area. NJMHC is licensed by the New Jersey Department of Health Office of Emergency Medical Services to serve as an emergency medical services provider at both the Basic Life Support (BLS) and Specialty Care Transfer Unit (SCTU) level. Over the years, NJMHC has provided both emergency and non-emergency ambulance services to both its contracted and "call for service" partners, including both healthcare facilities and municipalities.

---

[2] Capitalized terms used but not immediately defined herein shall have the meanings assigned to them elsewhere in this Third Amended Proposed Plan of Reorganization (the "Plan").

1

### 1.3    Filing of the Debtors' Chapter 11 Cases

On June 20, 2024, each of the Debtors filed voluntary petitions for relief under the Bankruptcy Code. Each of the Debtors' Chapter 11 cases are pending in the United States Bankruptcy Court in Newark, New Jersey (each of the Debtors' Chapter 11 cases collectively, the "Chapter 11 Cases").

### 1.4.    Legal Structure and Ownership

NJMHC is owed ninety-nine percent (99%) in part by NJ EMS Ventures LLC and one percent (1%) in part by NJ Emergencies Made Simple, LLC.

Lime Line Operations LLC ("Lime Line") is owed ninety-nine percent (99%) in part by Louis V. Greco, III and one percent (1%) in part by 160 17th Street, LLC.

SSME Services LLC ("SSME" and together with NJMHC and Lime Line, the "Debtors") is owed ninety-nine percent (99%) in part by Louis V. Greco, III and one percent (1%) in part by 160 17th Street, LLC.

### 1.5.    Debtors' Assets

Attached hereto as **Exhibit "A"** are the Debtors' projections, which include a consolidated list of the Debtors' assets.

### 1.6.    Debtors' Liabilities

See **Exhibit "A"** attached hereto for a consolidated list of the Debtors' liabilities.

### 1.7.    Current and Historical Financial Conditions

NJMHC originated in 2014 to provide emergency and non-emergency ambulance services to the communities of Northern New Jersey. Since then, NJMHC evolved into one of the prominent ambulance service providers in Northern New Jersey. As time has passed, NJMHC has expanded its range of services beyond its primary emergency and non-emergency ambulance services to include both training and educational services, including both in-service employee training and external training to emergency medical technicians (EMTs) and other first responders. Unfortunately, the residual impact of the COVID-19 Pandemic, industry headwinds, and certain issues with third-party billing providers has led to significant downsizing of the Debtors' operations causing a significant decrease in the Debtors' ability to generate revenue in the lead up to and following commencement of these Chapter 11 Cases.

### 1.8.    Events Leading to the Filing of the Bankruptcy Case

Several significant contributing factors have impacted the Debtors' financial condition. As indicated, the residual impact and challenges posed by the COVID-19 Pandemic have led to a detrimental impact on the Debtors' operations, including both an increase in cost and decrease in

availability of medical supplies and automotive parts as well as an increased capital costs of obtaining new equipment and vehicles to meet increased "call-for service" demand. In addition to increased operating costs, the Debtors have also had to contend with fluctuating and generally diminishing reimbursement and collection rates on the receivables generated by the jobs that have been serviced.

As billing and collection of receivables in the medical industry is a generally complicated endeavor, the Debtors have historically outsourced the logistics of receivable collections to third-party billing companies. In or around October of 2021 the Debtors terminated the relationship with their longstanding third-party billing company. The Debtors' transition from that third-party billing provider to their current third-party billing provider stretched over a longer period of time than anticipated and had a significantly detrimental impact on the Debtors' operations, including a significant decline in the Debtors ability to fully realize on the receivables generated by their operations.

### 1.9.    <u>Significant Events During the Bankruptcy Case</u>

On June 27, 2024, Mark Politan was appointed the Subchapter V Trustee in the Debtors' Chapter 11 Bankruptcy Cases. On August 9, 2024, the Court entered an order directing the Joint Administration of the Debtors' Chapter 11 Cases. On August 13, 2024, Joseph Tomaino was appointed as the Patient Care Ombudsman.

On September 18, 2024, the Debtors filed their *Small Business Debtors' Plan of Reorganization* [Docket No. 56]. On November 15, 2024, the Debtors filed their *Small Business Debtors' First Amended Plan of Reorganization* [Docket No. 89]. On January 28, 2025, the Debtors filed their *Small Business Debtors' Second Amended Plan of Reorganization* (the "<u>Second Amended Plan</u>") [Docket No. 111].

Since filing the Chapter 11 Cases, the Debtors have undertaken a recalibration of their operations in an attempt to begin re-deploying their ambulances in response to calls from their municipal partners and other "call-for-service" partners. This recalibration has enabled the Debtors to begin servicing the ambulance calls received, as opposed to simply referring said calls to friendly competitors, which the Debtors have been doing on a post-petition basis to maintain their key municipal and "call-for-service" relationships. To that end, the Debtors have restarted their operations and are currently running three (3) units on daily twelve (12) hour shifts. The Debtors anticipate increasing service commencing with the Effective Date of the Plan.

Simultaneously, the Debtors have explored the propriety of potential infusions of capital from third parties, a potential sale of the Debtors' operating assets, or taking on post-petition debtor-in-possession financing. These discussions led to an agreement between NJMHC and Tri-State Medical ("<u>Tri-State</u>") by which Tri-State was to provide NHMJC with staffing and management services that would enable NJMHC to expand and redeploy its operations. *See* Second Amended Plan, § 2.5. To that end, NJMHC and Tri-State entered that certain *Supplemental Staffing Agreement* (the "<u>Tri-State Staffing Agreement</u>"). *See* Second Amended Plan, <u>Exhibit "D"</u>. Agreements like the Tri-State Staffing Agreement are routinely entered into in the ordinary course of business by ambulance companies similar to NJMHC. Despite its execution in September of

2024, services under the Tri-State Staffing Agreement commenced in January 2025. Unfortunately, due to certain disagreements between NJMHC and Tri-State the Tri-State Staffing Agreement was terminated on or around April of 2025 and lead to certain subsequent motion practice in the Chapter 11 Cases, which was ultimately resolved pursuant to the terms of that certain *Consent Order Resolving Motion to Compel Debtor to Make Payment of Administrative Expense Claim by Date Certain, or Alternatively to Conver Debtor's Case to a Case Under Chapter 7 of the Bankruptcy Code*. *See* Docket Nos. 145, 155, 161.

The Debtors have also been exploring various options in connection with the sale of certain of their vehicles in an effort to raise additional post-petition working capital that will provide additional funding for the Debtors' operations under the Plan. To that end, the Debtors previously filed two motions to sell certain surplus ambulances, which motions were subsequently granted by the Court. *See* Docket Nos. 82, 83, 90, 91, 97, 108[3].

### 1.10.   Projected Recovery of Avoidable Transfers

The Debtors do not believe there are any viable preference, fraudulent conveyance, or other avoidance actions to be pursued under the Plan.

## ARTICLE 2

## THE PLAN

The Debtors' Plan must describe how their Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the

---

[3] Following entry of that certain *Order, Pursuant to 11 U.S.C. §§ 105 and 363, Approving the Debtors' Sale of Obe Ambulance Free and Clear of All Liens, Claims, and Encumbrances* (the "Sale Order") [Docket No. 108], NJMHC, Tri-State, and the initial purchase of the ambulance in question under the Sale Order entered  that certain Assignment and Assumption Agreement and Novation Agreement, each dated January 15, 2025, whereby the initial purchaser assigned its rights to purchase the Ambulance in connection with the Sale Order to Tri-State. *See Declaration of Louis V. Greco, III, in Response to that Certain Motion of Tri-State Medical Holdings LLC to Compel Debtor to Make Payment of Administrative Expense Claim by Date Certain, or Alternatively to Convert Debtor's Case to a Case Under Chapter 7 of the Bankruptcy Code* [Docket No. 155], ¶¶ 11-18.

Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

### 2.1.    <u>Unclassified Claims</u>

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtors must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.    If the Debtors trade in the ordinary course of business following filing of the Chapter 11 Cases, Creditors are entitled to be paid in full for the goods or services provided.  This ordinary trade debt incurred by the Debtors after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtors and their trade Creditors.

2.    If the Debtors received goods they had purchased in the ordinary course of business within 20 days before the Petition Dates, the value of the goods received is an Administrative Expense.

3.    Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtors during the course of the Chapter 11 Cases.  These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtors' estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount | Proposed Treatment |
|---|---|---|
| Professional fees, as approved by the Bankruptcy Court.<br><br>**Klestadt Winters Jureller Southard & Stevens ("KWJSS").** | **Final amount to be determined.** | After Bankruptcy Court approval, Payment through the Plan as follows:<br><br>**Retainer of $25,000 currently held in trust to be paid immediately upon Court approval. Balance to be paid as an administrative expense through the confirmed Plan.** |
| Clerk's Office fees. | | Paid in full on the Effective Date. |
| Other Administrative Expenses.<br><br>**Joseph Tomaino, the Patient Care Ombudsman.** | **Final amount to be determined.** | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows:<br><br>**To be paid as an administrative expense through the confirmed Plan.** |
| Trustee<br><br>**Mark Politan, the Subchapter V Trustee.** | **Final amount to be determined.** | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows:<br><br>**To be paid as an administrative expense through the confirmed Plan.** |
| TOTAL | **Final amount to be determined.** | |

B.    Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Amount Owed | Treatment |
|---|---|---|
| Internal Revenue Service | $624,179.97 | Payment Interval = quarterly installments to be funded on the final business day of each applicable calendar quarter.<br><br>Payment Begin Date = To be paid, together with any applicable statutory interest, in accordance with the Debtors' projections attached hereto as **Exhibit "A"**. |
| New Jersey Department of Treasury | $88,093.62 | Payment Interval = quarterly installments to be funded on the final business day of each applicable calendar quarter.<br><br>Payment Begin Date = To be paid, together with eight (8%) percent interest, in accordance with the Debtors' projections attached hereto as **Exhibit "A"**. |
| Employment Development Department – California | $2,808.56 | Payment Interval = quarterly installments to be funded on the final business day of each applicable calendar quarter.<br><br>Payment Begin Date = To be paid, together with any applicable statutory interest, in accordance with the Debtors' projections attached hereto as **Exhibit "A"**. |
| State of Connecticut, Department of Revenue Services | $1,007.24 | Payment Interval = quarterly installments to be funded on the final business day of each applicable calendar quarter.<br><br>Payment Begin Date = To be paid, together with any applicable statutory interest, in accordance with the Debtors' projections attached hereto as **Exhibit "A"**. |

**2.2    Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.  Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If

the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtors' secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider (Yes or No)? | Impairment | Treatment |
|---|---|---|---|---|
| Class 1 | Secured Claim of Internal Revenue Service (the "<u>IRS</u>")<br><br>Total Scheduled Amount of IRS Claim = $2,427,236.00<br><br>Total Allowed Amount of IRS Claim = $1,888,715.38 | No | Impaired | IRS to receive Cash in an amount equal to the Allowed amount of its Secured Claim in quarterly installments, in the sum of $1,888,715.38, plus any applicable statutory interest, in accordance with the Debtors' projections attached hereto as **<u>Exhibit "A"</u>**. Such applicable quarterly payments are to be to be paid from the disposable income from the Debtors' operations and funded on the final business day of each applicable calendar quarter. |
| Class 2(a) | Secured Claim of New Jersey Department of Treasury ("<u>NJDT</u>")<br><br>Total Scheduled Amount of NJDT Claim = $450,000.00<br><br>Total Allowed Amount of NJDT Claim = $414,529.17 | No | Impaired | NJDT to receive Cash in an amount equal to the Allowed amount of its Secured Claim in quarterly installments in the sum of $414,529.17, plus eight (8%) percent interest, in accordance with the Debtors' projections attached hereto as **<u>Exhibit "A"</u>**. Such applicable quarterly payments are to be to be paid from the disposable income from the Debtors' operations and funded on the final business day of each applicable calendar quarter. |

| Class # | Description | Insider (Yes or No)? | Impairment | Treatment |
|---------|-------------|----------------------|------------|-----------|
| Class 2(b) | Secured Claim of NJ Department of Labor, Div. of Employer Accounts ("NJDL")<br><br>Total Scheduled Amount of NJDL Claim = $0.00<br><br>Total Allowed Amount of NJDL Claim = $730,003.43 | No | Impaired | NJDL to receive Cash in an amount equal to the Allowed amount of its Secured Claim in quarterly installments in the sum of $730,003.43, plus eight (8%) percent interest, in accordance with the Debtors' projections attached hereto as **Exhibit "A"**. Such applicable quarterly payments are to be to be paid from the disposable income from the Debtors' operations and funded on the final business day of each applicable calendar quarter. |
| Class 2(c) | Secured Claim of NJ Department of Labor, Div. of Wage and Hour Compliance ("NJDWHC")<br><br>Total Scheduled Amount of NJDWHC Claim = $0.00<br><br>Total Allowed Amount of NJDL Claim = $22,387.45 | No | Impaired | NJDWHC to receive Cash in an amount equal to the Allowed amount of its Secured Claim in quarterly installments in the sum of $22,387.45, plus any applicable interest, in accordance with the Debtors' projections attached hereto as **Exhibit "A"**. Such applicable quarterly payments are to be to be paid from the disposable income from the Debtors' operations and funded on the final business day of each applicable calendar quarter. |
| Class 3 | Secured Claim of U.S. Small Business Administration ("US SBA")<br><br>Total Scheduled Amount of US SBA's Claim = $150,000.00<br><br>Total Allowed Amount of US SBA's Claim = $259,505.40 | No | Impaired | US SBA to receive Cash in an amount equal to the Allowed amount of its Secured Claim in quarterly installments in the sum of $259,505.40 in accordance with the Debtors' projections attached hereto as **Exhibit "A"**. Such applicable quarterly payments are to be to be paid from the disposable income from the Debtors' operations and funded on the final business day of each applicable calendar quarter. |

| Class # | Description | Insider (Yes or No)? | Impairment | Treatment |
|---|---|---|---|---|
| Class 4 | Secured Claim of STRATA Trust Company ("STRATA")<br><br>Total Scheduled Amount of STRATA Claim = $277,532.74<br><br>Total Allowed Amount of STRATA Claim = $324,327.37 | No | Impaired | STRATA to receive Cash in an amount equal to the Allowed amount of its Secured Claim in quarterly installments in the sum of $324,327.37 in accordance with the Debtors' projections attached hereto as **Exhibit "A"**. Such applicable quarterly payments are to be to be paid from the disposable income from the Debtors' operations and funded on the final business day of each applicable calendar quarter. |
| Class 5 | Secured Claim of Vivian Capital Group LLC ("Vivian")<br><br>Total Scheduled Amount of Vivian Claim = $55,774.14<br><br>Total Allowed Amount of Vivian Claim = $55,775.00 | No | Impaired | Vivian to receive Cash in an amount equal to its Allowed Secured Claim ($55,775.00) in equal quarterly installments of $3,846 in accordance with the Debtors' projections attached hereto as **Exhibit "A"**. Such applicable quarterly payments are to be to be paid from the disposable income from the Debtors' operations and funded on the final business day of each applicable calendar quarter. |

B. Classes of Priority Unsecured Claims

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

10

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| Class 6 | Priority unsecured claims pursuant to § 507(a)(4)<br><br>Total Amount of Claims = $77,918.44 | Impaired | Each holder of a Class 7 Claim to receive Cash in an amount equal to the Allowed amount of its Class 7 Claim in accordance with the Debtors' ordinary course payroll practices as outlined in the Debtors' projections attached hereto as **Exhibit "A"**. Such applicable payments are to be to be paid from the disposable income from the Debtors' operations. |

C. Classes of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Classes 6 through 7, which contain general unsecured claims against the Debtors:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| Class 7 | General Unsecured Claims related to unpaid wages previously earned by current and former employees<br><br>Total Amount of Claims = $1,111,673.56 | Impaired | Each holder of a Class 8 Claim to receive Cash in an amount equal to the Allowed amount of its Class 8 Claim in accordance with the Debtors' ordinary course payroll practices as outlined in the Debtors' projections attached hereto as **Exhibit "A"**. Such applicable payments are to be to be paid from the disposable income from the Debtors' operations. |

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| Class 8 | All other General Unsecured Claims against the Debtors | Impaired | Each holder of a Class 9 Claim to receive a pro rata share based on the Allowed amount of its Class 9 Claim in quarterly installments in accordance with the Debtors' projections attached hereto as **Exhibit "A"**. Such applicable quarterly payments are to be to be paid from the disposable income from the Debtors' operations and funded on the final business day of each applicable calendar quarter. The Debtors project that pro rata distributions to holders of Allowed Class 9 Claims will total approximately 10-100% of each holder's respective Allowed Claim. |

### D. Class of Equity Interest Holders

Equity Interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtors. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| Class 9 | Equity Interest Holders | Impaired | Will retain interest but will not receive any payment. |

### 2.3    **Estimated Number and Amount of Claims Objections**

The Debtors may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

The Debtors are currently in the process of reviewing the claims filed in these Chapter 11 Cases and reconciling the amounts contained therein as against their respective books and records. Once said review has been completed, the Debtors will make a final determination as to whether they will be objecting to certain of their Creditors' filed claims.

**2.4     Treatment of Executory Contracts and Unexpired Leases**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtors and another party to the contract.  The Debtors have the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.  The paragraphs below explain the Debtors' intentions regarding their Executory Contracts (which includes their unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

[X] Assumption of Executory Contracts.

The Executory Contracts shown on **Exhibit "B"** shall be assumed by NJMHC. Assumption means that NJMHC has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. Executory Contracts not explicitly included in **Exhibit "B"** are deemed rejected. Parties to rejected Executory Contracts shall have until thirty (30) days after the entry of an order confirming this Plan to file a claim for any rejection damages.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

A. Real Estate Lease Agreement with Zohar Zisapel Properties, Inc.

As it relates to the Real Estate Lease Agreement (the "Lease") by and between NJMHC and Zohar Zisapel Properties, Inc. ("Zohar"), NJMHC and Zohar have agreed that in connection with NJMHC's assumption of the Lease Agreement, NJMHC will make eleven (11) equal monthly payments to Zohar of $1,250 for a total amount of $13,750 in connection with payment of the pre-petition arrearage due and owing to Zohar. Such monthly payments are to begin on April 1, 2025. As required under the Bankruptcy Code, NJMHC will ensure that all post-petition rent accrued during these Chapter 11 Cases is current as of the Effective Date of the Plan.

**2.5     Means for Implementation of the Plan**

The Debtors have reached an agreement with third party non-debtor MOS whereby Lime Line will provide staffing and management services to MOS (the "MOS Agreement"). Debtor Lime Line will issue monthly invoices to MOS in connection with said staffing and management services that will be due and payable by MOS immediately upon receipt. Through this arrangement, the Debtors anticipate sufficient additional and immediately available monthly revenue which will aid in both (i) increasing their current operational capacities, thereby generating the increased go-forward revenue which will be utilized, in part, to fund the Plan

13

payments to Creditors outlined herein, and (ii) funding NJMHC's operations during the period between NJMHC's accounts receivable generation and ultimate collection on the same[4].

Such increase in current operational capacities includes the ability to recall approximately thirty (30) employees and further increase current operations from the three (3) units operating daily twelve (12) hour shifts. Such increased operations will enable the Debtors to recapture the calls for service resulting in billable transports being called in by their municipal and healthcare facility partners thereby significantly increasing revenue generated. This increased revenue will be utilized to fund the payments outlined under the Plan.

MOS is a New Jersey organized limited liability company that was formed in 2020. MOS is owned by Hope Valley Training and Consulting LLC (20%) and G46 LLC (80%) and is managed by Charles Rawley. Unlike NJMHC, MOS is not licensed by the New Jersey Department of Health Office of Emergency Medical Services to serve as an emergency medical services provider and does not provide ambulance transportation services. Rather, MOS operates in furtherance of a management and staffing agreement with Saint Michales Mobile HealthCare LLC[5] whereby it provides Saint Michales Medical Center with certain management and consulting services related to St Michaels' ambulance logistics. Such services differ from and are outside the scope of the business in which NJMHC engages in, and consequently, such staffing provided by Lime Line to MOS will not interfere with the staffing that Lime Line provides to NJMHC for NJMHC's ambulance transportation services. MOS is currently in the process of developing further contracts of this nature with other healthcare facilities.

On Confirmation of the Plan, all property of the Debtors, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtors. The Debtors expect to have sufficient cash on hand to make the payments required on the Effective Date.

The respective Mangers of the Debtors immediately prior to the Effective Date shall serve as the initial Managers of the Reorganized Debtors on and after the Effective Date. Each Manager shall serve in accordance with applicable non-bankruptcy law and the Debtors' respective operating agreements, as each of the same may be amended from time to time.

### 2.6    Substantive Consolidation for Plan Distribution Purposes Only

On the Effective Date: (a) all Assets (and all proceeds thereof) and liabilities of each Debtor shall be treated as if merged into and with the Assets and liabilities of the other Debtors, (b) no Distributions shall be made under the Plan on account of intercompany Claims among the Debtors and all such Claims shall be eliminated, (c) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated and extinguished so that any Claim against any Debtor and guarantee thereof executed by any other Debtor and any joint and several liability of any of

---

[4] Lime Line has previously provided staffing services to MOS during these Chapter 11 Cases. In connection with the same, MOS has paid to Lime Line certain monthly amounts in exchange for said services. Additionally, MOS has from time to time provided certain infusions of monies to the Debtors without the expectation of repayment of the same by the Debtors.
[5] Saint Michales Mobile HealthCare LLC is a partnership controlled by Saint Michaels Medical Center.

the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed against any Debtor shall be filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of setoff under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of the other Debtors. As indicated, such substantive consolidation shall not (other than for Plan distribution purposes) affect the legal and corporate structures of the Debtors. Entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors for Plan distribution purposes only.

**2.7    Duties and Rights of the Disbursing Agent; Distributions and Unclaimed Payments**

Unless otherwise ordered by a Final Order of the Bankruptcy Court or otherwise provided in this Plan, the "Disbursing Agent" shall be the Reorganized Debtor, specifically, NJMHC. The Disbursing Agent shall make and effectuate all distributions required under the Plan.

The Disbursing Agent shall not be liable to any creditor or any other person, firm, or corporation, for any error of judgment or for any mistake of law or fact or any act done, caused to be done, or omitted to be done, by the Disbursing Agent or any of its agents, representatives, or attorneys. The Disbursing Agent shall be liable only for acts of willful misconduct, gross negligence, or breach of fiduciary duty by itself or such agents.

Distributions to holders of Allowed Claims shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or if no proof of claim is filed, on the Schedules, or to such other address as may be designated by such Creditor in writing to the Debtors. A payment is to be deemed unclaimed if the payment on the distribution is not negotiated by the particular claimholder within 120 days of it being sent by the Disbursing Agent.

At the expiration of the 120 days, the Disbursing Agent shall make reasonable efforts to provide notice to the claimholder that such claimholder's distribution is unclaimed or unnegotiated. If after thirty (30) days such distribution remains unclaimed or unnegotiated, then and in that event such holders Claim shall thereupon be deemed canceled and any such holder shall not be entitled to any payments under the Plan, and such unclaimed distributions shall be returned to and retained by the Debtors.

**2.8    Post-Confirmation Management**

The Post-Confirmation Managers of the Debtors, and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| Louis V. Greco, III | Manager of the Debtors | $54,275.00[6] |

**2.9**     **Tax Consequences of the Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The following are the anticipated tax consequences of the Plan: *Creditors should consult their own accountants, attorneys, and/or financial advisors regarding any tax consequences resulting from the discharge of any or all money owed to them by the Debtors.*

**2.10**     **Projections in Support of Debtors' Ability to Make Payments Under the Proposed Plan**

Debtors have provided projected financial information. Those projections are listed in **Exhibit "A"**.

### ARTICLE 3
### FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan.

**3.1.**     **Ability to Initially Fund Plan**

The Debtors believe that they will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. The amount of such cash on hand on the Effective Date of the Plan, and the sources of that cash, are included in the Debtors' projections attached hereto as **Exhibit "A"**.

**3.2.**     **Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The Debtors must submit all or such portion of the future earnings or other future income of the Debtors to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtors have provided projected financial information. Those projections are listed in **Exhibit "A"** (referenced in § 2.10, above).

---

[6] Mr. Greco's salary increases to $82,875.00 three years after the Effective Date; it increases to $85,361.00 four years after the Effective Date; and it increases to $87,725.00 five years after the Effective Date.

The Debtors' financial projections show that the Debtors will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes sufficient to pay creditors' claims over the life of the Plan. The final Plan payment is expected to be paid in 2030.

**_You Should Consult with Your own Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections_**.

### ARTICLE 4
### <u>LIQUIDATION ANALYSIS.</u>

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation.  A liquidation analysis is attached hereto as **<u>Exhibit "C"</u>**.

### ARTICLE 5
### <u>DISCHARGE</u>

<u>Discharge</u>. **If the Plan is confirmed under § 1191(a)**, on the Confirmation Date of this Plan, the Debtors will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b)**, as soon as practicable after completion by the Debtors of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtors after the order for relief under this chapter, the court shall grant the Debtors a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt —

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

### ARTICLE 6
### <u>GENERAL PROVISIONS</u>

**6.1.**   **<u>Title to Assets</u>**

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtors, and (ii) after confirmation  of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtors.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtors

acquires, as well as earnings from services performed by the Debtors, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first.  Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtors shall remain in possession of all property of the estate.

### 6.2.   **Binding Effect**

If the Plan is confirmed, the provisions of the Plan will bind the Debtors and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3.   **Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.   **Retention of Jurisdiction by the Bankruptcy Court**

The Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear  and  allow  all applications  for  compensation  to professionals  and  other Administrative Expenses; (iv) to   resolve   all   issues   regarding Claims   objections,   and issues arising  from  the assumption/rejection of executory contracts or unexpired leases, and (v) to  adjudicate any cause of action which may exist in favor of the Debtors, including preference and fraudulent transfer causes of action.

### 6.5.   **Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6.   **Modification of Plan**.

The Debtors may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtors may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

18

If the Plan is confirmed under Section 1191(b), the Debtors may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7.**    **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtors, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

**ARTICLE 7**
**EVENTS OF DEFAULT**

**7.1.**    **Events of Default**

The occurrence of any of the following events shall constitute an event of default under the Plan ("Event of Default"):

(a) The failure of the Debtors, after receipt of three (3) business days written notice, to make any payment required to be made under the Plan, which failure, prior to the receipt of the three (3) business days written notice, shall have remained uncured for a period of fifteen (14) days after the date such payment is required to be made, unless the time for such payment has been extended in accordance with the Plan.

(b) The failure of the Debtors to comply with any of the other covenants contained in the Plan, which failure shall remain uncured for a period of fourteen (14) days after the Debtors have received written notice of such failure.

**7.2.**    **Effect of Default**

In the event that the Debtors defaults under the provisions of the Plan, and such default is not cured, then, at the option of any creditor or the United States Trustee, a motion may be filed with the Bankruptcy Court seeking an Order of the Bankruptcy Court compelling the Debtors to make such payment or act in a manner consistent with the provisions of the Plan or seeking the conversion of the Chapter 11 Case to a Chapter 7 proceeding.

**ARTICLE 8**
**ATTACHMENTS**

The following documents accompany the Plan:

19

[X]   Debtors' Consolidated Assets at Fair Market Value, included in the projections annexed as **Exhibit "A"**.

[X]   Debtors' Consolidated Liabilities, included in the projections annexed as **Exhibit "A"**.

[X]   Financial forecast for the Debtors, included in the projections annexed as **Exhibit "A"**.

[X]   Tables showing the amount of cash on hand as of the Effective Date, and the sources of that cash, information included in the projections annexed as **Exhibit "A"** .

[X]   Executory Contracts and Unexpired Leases, to be Assumed annexed as **Exhibit "B"**.

[X]   Liquidation Analysis, annexed as **Exhibit "C"**.

[X]   MOS Agreement – Copy to Be Filed in Advance of Confirmation Hearing.

## ARTICLE 9
## FREQUENTLY ASKED QUESTIONS

**What Is the DEBTOR Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Under Chapter 11, a debtor attempts to restructure the claims held against it.  Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan.  If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

How Do I Determine Which Class I Am In? To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor.  If you do not have any collateral, your claim is unsecured.  The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Article 2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization Important?**  Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan.  If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPARIED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Article 2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When is the Deadline by Which I Need to Return My Ballot?** The Plan distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is November 11, 2025. Ballots should be mailed to the following address: Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn: Tracy L. Klestadt & Andrew C. Brown.

**How do I Determine When and How Much I Will be Paid?** In Article 2, the Debtors have provided both written and financial summaries of what they anticipate each class of creditors will receive under the Plan.

## ARTICLE 10
### DEFINITIONS

10.1.   The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

10.2.   **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

10.3.   **Administrative Convenience Class**: A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

10.4.   **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of

the Code, including without limitation, any actual and necessary expenses of preserving the Debtors' estates, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtors' estates under Chapter 123, Title 28, United States Code.

    **10.5**    **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

    **10.6.**    **Allowed Claim**: Any claim against the Debtors pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtors, and (b) as to which either (i) a party in interest, including the Debtors, does not timely file an objection, or (ii) is allowed by a Final Order.

    **10.7.**    **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtors or Debtors-in-Possession shall be entitled on the Confirmation Date.

    **10.8.**    **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

    **10.9.**    **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtors or Debtors-in-Possession shall be entitled on the Confirmation Date.

    **10.10.**  **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

    **10.11.**  **Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

    **10.12.**  **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

    **10.13.**  **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtors, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

    **10.14.**  **Chapter 11 Cases**: The jointly-administered cases under Chapter 11 of the Bankruptcy Code filed by the Debtors and Debtors-in-Possession currently pending before the Bankruptcy Court.

    **10.15**  **Claim**: Any "right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**10.16.   Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**10.17.   Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**10.18.   Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**10.19.   Confirmation Hearing**: The hearing to be held on November 18, 2025, at 10:00 A.M. (EST) to consider confirmation of the Plan.

**10.20.   Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**10.21.   Creditor**: Any person who has a Claim against the Debtors that arose on or before the Petition Date.

**10.22.   Debtors and Debtors-in-Possession**: NJMHC, Lime Line, and SSME, the debtors-in-possession in these Chapter 11 Cases.

**10.23.   Disputed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code that the Debtors have in any way objected to, challenged or otherwise disputed.

**10.24.   Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**10.25.   Effective Date**: Pursuant to D.N.J. LBR 3020-1, the effective date of a Chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**10.26.   Equity Interest**: An ownership interest in the Debtors.

**10.27.   Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**10.28.  Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**10.29.  IRC**: The Internal Revenue Code.

**10.30.  Petition Date**: June 20, 2024, the date the Debtors filed their Chapter 11 petitions for relief.

**10.31.  Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**10.32.  Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**10.33.  Reorganized Debtors**: The Debtors after the Effective Date.

**10.34.  Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtors with the Bankruptcy Court listing liabilities and assets.

**10.35.  Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtors.

**10.36.  Trustee**: Mark Politan, the subchapter V trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**10.37.  Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

*[Remainder intentionally blank]*

24

Dated:  New York, New York                           **KLESTADT WINTERS JURELLER**
        October 14, 2025                             **SOUTHARD & STEVENS, LLP**


                                    By:  */s/ Tracy L. Klestadt*
                                         _____
                                         Tracy L. Klestadt
                                         Andrew C. Brown (admitted *pro hac vice*)
                                         200 West 41st Street, 17th Floor
                                         New York, New York 10036
                                         Tel: (212) 972-3000
                                         Fax: (212) 972-2245
                                         Email: tklestadt@klestadt.com
                                                abrown@klestadt.com

                                         *Attorneys for the Debtors and*
                                         *Debtors-in-Possession*


Dated:  Mahwah, New Jersey                           **NJ MOBILE HEALTH CARE LLC; LIME**
        October 14, 2025                             **LINE    OPERATIONS    LLC;    SSME**
                                                     **SERVICES LLC**


                                    By:  */s/ Louis V. Greco, III*
                                         _____
                                         Louis V. Greco, III
                                         Manager of the Debtors

# **<u>Exhibit A</u>**

| | Quarter 1 | Quarter 2 | Quarter 3 | Quarter 4 | Year 1 Total |
|---|---|---|---|---|---|
| NJMHC | 2026 Q1 | 2026 Q2 | 2026 Q3 | 2026 Q4 | 2026 |
| **Revenue** | | | | | |
| Transportation Revenue | *847,872* | *900,864* | *900,864* | *1,059,840* | *3,709,440* |
| Prior Collections | 80,000 | - | - | - | 80,000 |
| Anticipated Collectible 1 | 423,936 | 450,432 | 450,432 | 529,920 | 1,854,720 |
| Anticipated Collectible 2 | 295,872 | 450,432 | 450,432 | 476,928 | 1,673,664 |
| **Total Anticipated Collections** | 799,808 | 900,864 | 900,864 | 1,006,848 | 3,608,384 |
| LLO - Staffing Contract | 438,000 | 438,000 | 438,000 | 1,084,050 | 2,398,050 |
| LLO - Supv Staffing Contract | 120,450 | 120,450 | 120,450 | 132,495 | 493,845 |
| MOS Dispatch | 41,063 | 41,063 | 41,063 | 47,222 | 170,409 |
| **Total Revenue** | 1,399,321 | 1,500,377 | 1,500,377 | 2,270,615 | 6,670,688 |
| | | | | | |
| NJMHC Staffing Expense | 409,500 | 491,400 | 491,400 | 640,322 | 2,032,622 |
| LLO - Staffing Contact Expense | 328,500 | 328,500 | 328,500 | 813,038 | 1,798,538 |
| LLO - Supv Staffing Contract Expense | 99,645 | 99,645 | 99,645 | 109,610 | 408,545 |
| Medical Billing | 39,990 | 45,043 | 45,043 | 50,342 | 180,419 |
| Uniforms | 9,000 | 9,000 | 9,000 | 9,000 | 36,000 |
| Medical Supplies | 8,790 | 9,308 | 9,308 | 10,859 | 38,264 |
| Fuel | 31,025 | 32,850 | 32,850 | 38,325 | 135,050 |
| Tolls | 5,171 | 5,475 | 5,475 | 6,388 | 22,508 |
| Mechanical Repairs | 29,750 | 31,500 | 31,500 | 36,750 | 129,500 |
| Communications | 15,750 | 15,750 | 15,750 | 15,000 | 62,250 |
| Dispatch | 109,125 | 109,125 | 109,125 | 109,125 | 436,500 |
| **Total COGS** | 1,086,247 | 1,177,596 | 1,177,596 | 1,838,757 | 5,280,195 |
| | | | | | |
| **Gross Profit** | 313,074 | 322,781 | 322,781 | 431,858 | 1,390,493 |
| **Gross Profit Margin** | 22% | 22% | 22% | 19% | |
| | | | | | |
| LLO - Management Costs | 77,935 | 77,935 | 77,935 | 112,125 | 345,930 |
| Rent / Lease | 16,500 | 16,500 | 16,500 | 16,500 | 66,000 |
| Insurance | 18,000 | 18,000 | 18,000 | 24,000 | 78,000 |
| Klestadt | 27,500 | 22,500 | 22,500 | 22,500 | 95,000 |
| Ombudsman | 2,500 | 1,667 | - | - | 4,167 |
| Trustee | 1,833 | 1,500 | 1,500 | 1,500 | 6,333 |
| Accountant - Current | 6,249 | 6,249 | 6,249 | 6,249 | 24,996 |
| Miscellaneous | - | - | - | - | - |
| **Total Expenses** | 150,517 | 144,351 | 142,684 | 182,874 | 620,426 |
| | | | | | |
| **Net Profit** | 162,557 | 178,430 | 180,097 | 248,984 | 770,067 |
| **Net Profit Percentage** | 12% | 12% | 12% | 11% | |
| | | | | | |
| **Cash Before Capital Expenses** | **169,965** | **214,134** | **181,405** | **210,333** | **210,333** |
| | | | | | |
| Class 4 - Strata | - | 23,166 | 23,166 | 23,166 | 69,499 |
| Class 5 - Vivian Capital | - | 3,099 | 3,099 | 3,984 | 10,182 |
| Class 6 -Employee Back Pay | - | 58,439 | 19,480 | - | 77,918 |
| Class 7 -Employee Back Pay | - | - | 24,341 | 36,000 | 60,341 |
| Payroll Taxes - Back Pay | - | 11,688 | 8,764 | 7,200 | 27,652 |
| Class 1 - IRS | 60,000 | 75,000 | 150,000 | 150,000 | 435,000 |
| Class 2(a) - NJDT | - | - | - | - | - |
| Class 2 (b) - NJDOL | - | - | - | - | - |
| Class 2 (C) - NJDWHC | - | - | - | - | - |
| Class 3 - SBA | - | - | - | - | - |
| PTC -1 IRS | - | - | - | - | - |
| PTC 2 - NJDT | - | - | - | - | - |
| PTC 3 - EDD CA | - | - | - | - | - |
| PTC 4 - CT DRS | - | - | - | - | - |
| Class 8 - Unsecured Creditors | - | - | - | - | - |
| **Exit Expenses Total** | **60,000** | **171,392** | **228,850** | **220,350** | **680,592** |
| | | | | | |
| **Ending Cash** | **149,965** | **157,003** | **108,249** | **136,883** | **136,883** |

| NJMHC | Quarter 5 2027 Q1 | Quarter 6 2027 Q2 | Quarter 7 2027 Q3 | Quarter 8 2027 Q4 | Year 2 Total 2027 |
|---|---|---|---|---|---|
| **Revenue** | | | | | |
| Transportation Revenue | *1,192,320* | *1,324,800* | *1,324,800* | *1,724,890* | *5,566,810* |
| Prior Collections | - | - | - | - | - |
| Anticipated Collectible 1 | 596,160 | 662,400 | 662,400 | 862,445 | 2,783,405 |
| Anticipated Collectible 2 | 552,000 | 618,240 | 662,400 | 729,082 | 2,561,722 |
| **Total Anticipated Revenue** | 1,148,160 | 1,280,640 | 1,324,800 | 1,591,526 | 5,345,126 |
| LLO - Staffing Contract | 1,084,050 | 1,084,050 | 1,084,050 | 1,084,050 | 4,336,200 |
| LLO - Supv Staffing Contract | 132,495 | 132,495 | 132,495 | 132,495 | 529,980 |
| MOS Dispatch | 47,222 | 47,222 | 47,222 | 54,305 | 195,971 |
| **Total Revenue** | 2,411,927 | 2,544,407 | 2,588,567 | 2,862,377 | 10,407,277 |
| NJMHC Staffing Expense | 715,026 | 799,383 | 799,383 | 995,935 | 3,309,727 |
| LLO - Staffing Contact Expense | 813,038 | 813,038 | 813,038 | 813,038 | 3,252,150 |
| LLO - Supv Staffing Contract Expense | 109,610 | 109,610 | 109,610 | 109,610 | 438,438 |
| Medical Billing | 57,408 | 64,032 | 66,240 | 79,576 | 267,256 |
| Uniforms | 9,000 | 9,000 | 9,000 | 9,000 | 36,000 |
| Medical Supplies | 12,410 | 13,961 | 13,961 | 17,064 | 57,396 |
| Fuel | 43,800 | 49,275 | 49,275 | 60,225 | 202,575 |
| Tolls | 7,300 | 8,213 | 8,213 | 10,038 | 33,763 |
| Mechanical Repairs | 42,000 | 47,250 | 47,250 | 57,750 | 194,250 |
| Communications | 15,000 | 15,000 | 15,000 | 18,000 | 63,000 |
| Dispatch | 109,125 | 109,125 | 109,125 | 109,125 | 436,500 |
| **Total COGS** | 1,933,716 | 2,037,886 | 2,040,094 | 2,279,359 | 8,291,055 |
| **Gross Profit** | 478,211 | 506,521 | 548,473 | 583,017 | 2,116,222 |
| Gross Profit Margin | 20% | 20% | 21% | 20% | |
| LLO - Management Costs | 112,125 | 112,125 | 112,125 | 134,875 | **471,250** |
| Rent / Lease | 16,500 | 16,500 | 16,500 | 16,500 | **66,000** |
| Insurance | 24,000 | 24,000 | 24,000 | 30,000 | **102,000** |
| Klestadt | 22,500 | 22,500 | 22,500 | 9,000 | **76,500** |
| Ombudsman | - | - | - | - | **-** |
| Trustee | 1,500 | 1,500 | 1,500 | 1,500 | **6,000** |
| Accountant - Current | 6,249 | 6,249 | 6,249 | 6,249 | **24,996** |
| Miscellaneous | - | - | - | - | **-** |
| **Total Expenses** | 182,874 | 182,874 | 182,874 | 198,124 | 746,746 |
| **Net Profit** | 295,337 | 323,647 | 365,599 | 384,893 | 1,369,476 |
| Net Profit Percentage | 12% | 13% | 14% | 13% | |
| **Cash Before Capital Expenses** | 238,846 | 226,976 | 236,293 | 255,714 | 957,829 |
| Class 4 - Strata | 23,166 | 23,166 | 23,166 | 23,166 | **92,665** |
| Class 5 - Vivian Capital | 3,984 | 3,984 | 3,984 | 3,984 | **15,936** |
| Class 6 -Employee Back Pay | - | - | - | - | **-** |
| Class 7 -Employee Back Pay | 30,867 | 26,277 | 24,000 | 34,435 | **115,579** |
| Payroll Taxes - Back Pay | 6,173 | 5,255 | 4,800 | 6,887 | **23,116** |
| Class 1 - IRS | 225,000 | 300,000 | 300,000 | 300,000 | **1,125,000** |
| Class 2(a) - NJDT | - | - | - | - | **-** |
| Class 2 (b) - NJDOL | - | - | - | - | **-** |
| Class 2 (C) - NJDWHC | - | - | - | - | **-** |
| Class 3 - SBA | - | - | - | - | **-** |
| PTC -1 IRS | - | - | - | - | **-** |
| PTC 2 - NJDT | - | - | - | - | **-** |
| PTC 3 - EDD CA | - | - | - | - | **-** |
| PTC 4 - CT DRS | - | - | - | - | **-** |
| Class 8 - Unsecured Creditors | - | - | - | - | **-** |
| **Exit Expenses Total** | 289,191 | 358,682 | 355,950 | 368,472 | 1,372,295 |
| **Ending Cash** | 143,029 | 107,994 | 117,643 | 134,064 | 134,064 |

| | Quarter 9 | Quarter 10 | Quarter 11 | Quarter 12 | Year 3 |
|---|---|---|---|---|---|
| NJMHC | 2028 Q1 | 2028 Q2 | 2028 Q3 | 2028 Q4 | 2028 |
| **Revenue** | | | | | |
| Transportation Revenue | *1,724,890* | *1,724,890* | *1,724,890* | *1,986,405* | *7,161,074* |
| Prior Collections | - | - | - | - | - |
| Anticipated Collectible 1 | 862,445 | 862,445 | 862,445 | 993,203 | 3,580,537 |
| Anticipated Collectible 2 | 862,445 | 862,445 | 862,445 | 906,031 | 3,493,365 |
| **Total Anticipated Collections** | 1,724,890 | 1,724,890 | 1,724,890 | 1,899,233 | 7,073,902 |
| LLO - Staffing Contract | 1,084,050 | 1,084,050 | 1,084,050 | 1,192,455 | 4,444,605 |
| LLO - Supv Staffing Contract | 132,495 | 132,495 | 132,495 | 146,949 | 544,434 |
| MOS Dispatch | 54,305 | 54,305 | 54,305 | 54,305 | 217,221 |
| **Total Revenue** | 2,995,740 | 2,995,740 | 2,995,740 | 3,292,942 | 12,280,162 |
| | | | | | |
| NJMHC Staffing Expense | 995,935 | 995,935 | 995,935 | 1,115,307 | 4,103,112 |
| LLO - Staffing Contact Expense | 813,038 | 813,038 | 813,038 | 899,762 | 3,338,874 |
| LLO - Supv Staffing Contract Expense | 109,610 | 109,610 | 109,610 | 120,450 | 449,279 |
| Medical Billing | 86,244 | 86,244 | 86,244 | 94,962 | 353,695 |
| Uniforms | 9,000 | 9,000 | 9,000 | 12,000 | 39,000 |
| Medical Supplies | 17,064 | 17,064 | 17,064 | 22,183 | 73,374 |
| Fuel | 60,225 | 60,225 | 60,225 | 78,293 | 258,968 |
| Tolls | 10,038 | 10,038 | 10,038 | 13,049 | 43,161 |
| Mechanical Repairs | 57,750 | 57,750 | 57,750 | 75,075 | 248,325 |
| Communications | 18,000 | 18,000 | 18,000 | 23,400 | 77,400 |
| Dispatch | 109,125 | 109,125 | 109,125 | 121,444 | 448,819 |
| **Total COGS** | 2,286,028 | 2,286,028 | 2,286,028 | 2,575,923 | 9,434,006 |
| | | | | | |
| **Gross Profit** | 709,712 | 709,712 | 709,712 | 717,019 | 2,846,156 |
| **Gross Profit Margin** | 24% | 24% | 24% | 22% | |
| | | | | | |
| LLO - Management Costs | 134,875 | 134,875 | 134,875 | 138,921 | 543,546 |
| Rent / Lease | 16,500 | 16,500 | 16,500 | 16,500 | 66,000 |
| Insurance | 30,000 | 30,000 | 30,000 | 39,000 | 129,000 |
| Klestadt | 9,000 | 9,000 | 9,000 | - | 27,000 |
| Ombudsman | - | - | - | - | - |
| Trustee | 1,500 | 1,500 | 1,500 | - | 4,500 |
| Accountant - Current | 6,249 | 6,249 | 6,249 | 9,000 | 27,747 |
| Miscellaneous | - | - | - | - | - |
| **Total Expenses** | 198,124 | 198,124 | 198,124 | 203,421 | 797,793 |
| | | | | | |
| **Net Profit** | 511,588 | 511,588 | 511,588 | 513,598 | 2,048,363 |
| **Net Profit Percentage** | 17% | 17% | 17% | 16% | |
| | | | | | |
| **Cash Before Capital Expenses** | 305,021 | 403,838 | 424,743 | 531,747 | 1,665,348 |
| | | | | | |
| Class 4 - Strata | 23,166 | 23,166 | 23,166 | 23,166 | 92,665 |
| Class 5 - Vivian Capital | 3,984 | 3,984 | 3,984 | 3,984 | 15,936 |
| Class 6 -Employee Back Pay | - | - | - | - | - |
| Class 7 -Employee Back Pay | 30,620 | 29,648 | 30,000 | 45,000 | 135,267 |
| Payroll Taxes - Back Pay | 6,124 | 5,930 | 6,000 | 9,000 | 27,053 |
| Class 1 - IRS | 328,715 | - | - | - | 328,715 |
| Class 2(a) - NJDT | - | - | - | 310,897 | 310,897 |
| Class 2 (b) - NJDOL | - | - | - | - | - |
| Class 2 (C) - NJDWHC | - | - | - | - | - |
| Class 3 - SBA | - | - | - | - | - |
| PTC -1 IRS | - | 300,000 | 324,180 | - | 624,180 |
| PTC 2 - NJDT | - | - | - | - | - |
| PTC 3 - EDD CA | - | - | - | - | - |
| PTC 4 - CT DRS | - | - | - | - | - |
| Class 8 - Unsecured Creditors | - | - | - | - | - |
| **Exit Expenses Total** | 391,009 | 362,727 | 387,330 | 392,047 | 1,533,114 |
| | | | | | |
| **Ending Cash** | 155,255 | 282,354 | 279,513 | 401,064 | 401,064 |

| | Quarter 13 | Quarter 14 | Quarter 15 | Quarter 16 | Year 4 |
|---|---|---|---|---|---|
| NJMHC | 2029 Q1 | 2029 Q2 | 2029 Q3 | 2029 Q4 | 2029 |
| **Revenue** | | | | | |
| Transportation Revenue | *1,986,405* | *1,986,405* | *1,986,405* | *2,269,760* | *8,228,975* |
| Prior Collections | - | - | - | - | - |
| Anticipated Collectible 1 | 993,203 | 993,203 | 993,203 | 1,134,880 | 4,114,488 |
| Anticipated Collectible 2 | 993,203 | 993,203 | 993,203 | 1,040,428 | 4,020,036 |
| **Total Anticipated Collections** | **1,986,405** | **1,986,405** | **1,986,405** | **2,175,308** | **8,134,524** |
| LLO - Staffing Contract | 1,192,455 | 1,192,455 | 1,192,455 | 1,311,701 | 4,889,066 |
| LLO - Supv Staffing Contract | 146,949 | 146,949 | 146,949 | 161,644 | 602,491 |
| MOS Dispatch | 54,305 | 54,305 | 54,305 | 54,305 | 217,221 |
| **Total Revenue** | 3,380,114 | 3,380,114 | 3,380,114 | 3,702,958 | 13,843,301 |
| NJMHC Staffing Expense | 1,115,307 | 1,115,307 | 1,115,307 | 1,240,946 | 4,586,867 |
| LLO - Staffing Contact Expense | 899,762 | 899,762 | 899,762 | 989,738 | 3,689,022 |
| LLO - Supv Staffing Contract Expense | 120,450 | 120,450 | 120,450 | 132,495 | 493,845 |
| Medical Billing | 99,320 | 99,320 | 99,320 | 108,765 | 406,726 |
| Uniforms | 12,000 | 12,000 | 12,000 | 12,000 | 48,000 |
| Medical Supplies | 22,183 | 22,183 | 22,183 | 28,838 | 95,386 |
| Fuel | 78,293 | 78,293 | 78,293 | 101,780 | 336,658 |
| Tolls | 13,049 | 13,049 | 13,049 | 16,963 | 56,110 |
| Mechanical Repairs | 75,075 | 75,075 | 75,075 | 97,598 | 322,823 |
| Communications | 23,400 | 23,400 | 23,400 | 30,420 | 100,620 |
| Dispatch | 121,444 | 121,444 | 121,444 | 130,888 | 495,219 |
| **Total COGS** | 2,580,282 | 2,580,282 | 2,580,282 | 2,890,431 | 10,631,276 |
| **Gross Profit** | 799,832 | 799,832 | 799,832 | 812,527 | 3,212,025 |
| **Gross Profit Margin** | 24% | 24% | 24% | 22% | |
| LLO - Management Costs | 138,921 | 138,921 | 138,921 | 143,089 | **559,853** |
| Rent / Lease | 16,500 | 16,500 | 16,500 | 16,500 | **66,000** |
| Insurance | 39,000 | 39,000 | 39,000 | 50,700 | **167,700** |
| Klestadt | - | - | - | - | **-** |
| Ombudsman | - | - | - | - | **-** |
| Trustee | - | - | - | - | **-** |
| Accountant - Current | 9,000 | 9,000 | 9,000 | 6,249 | **33,249** |
| Miscellaneous | - | - | - | - | **-** |
| **Total Expenses** | 203,421 | 203,421 | 203,421 | 216,538 | **826,802** |
| **Net Profit** | 596,411 | 596,411 | 596,411 | 595,989 | **2,385,223** |
| **Net Profit Percentage** | 18% | 18% | 18% | 16% | |
| **Cash Before Capital Expenses** | **604,575** | **545,035** | **705,626** | **861,947** | **2,717,182** |
| Class 4 - Strata | 23,166 | 23,166 | 23,166 | - | **69,499** |
| Class 5 - Vivian Capital | 3,984 | 3,984 | 3,984 | - | **11,952** |
| Class 6 -Employee Back Pay | - | - | - | - | **-** |
| Class 7 -Employee Back Pay | 45,000 | 85,695 | 60,000 | 171,325 | **362,020** |
| Payroll Taxes - Back Pay | 9,000 | 17,139 | 12,000 | - | **38,139** |
| Class 1 - IRS | - | - | - | - | **-** |
| Class 2(a) - NJDT | 103,632 | - | - | - | **103,632** |
| Class 2 (b) - NJDOL | 243,334 | 365,002 | 121,667 | - | **730,003** |
| Class 2 (C) - NJDWHC | 22,387 | - | - | - | **22,387** |
| Class 3 - SBA | 86,502 | 129,753 | 43,251 | - | **259,505** |
| PTC -1 IRS | - | - | - | - | **-** |
| PTC 2 - NJDT | 88,094 | - | - | - | **88,094** |
| PTC 3 - EDD CA | 2,809 | - | - | - | **2,809** |
| PTC 4 - CT DRS | 1,007 | - | - | - | **1,007** |
| Class 8 - Unsecured Creditors | - | - | - | 423,423 | **423,423** |
| **Exit Expenses Total** | **628,916** | **624,738** | **264,068** | **594,748** | **2,112,470** |
| **Ending Cash** | **368,560** | **340,233** | **672,576** | **673,817** | **673,817** |

| | Quarter 17 | Quarter 18 | Quarter 19 | Quarter 20 | Year 5 |
|---|---|---|---|---|---|
| NJMHC | 2030 Q1 | 2030 Q2 | 2030 Q3 | 2030 Q4 | 2030 |
| **Revenue** | | | | | |
| **Transportation Revenue** | *2,269,760* | *2,269,760* | *2,269,760* | *2,269,760* | *9,079,040* |
| Prior Collections | - | - | - | - | - |
| Anticipated Collectible 1 | 1,134,880 | 1,134,880 | 1,134,880 | 1,134,880 | 4,539,520 |
| Anticipated Collectible 2 | 1,134,880 | 1,134,880 | 1,134,880 | 1,134,880 | 4,539,520 |
| **Total Anticipated Collections** | 2,269,760 | 2,269,760 | 2,269,760 | 2,269,760 | 9,079,040 |
| LLO - Staffing Contract | 1,311,701 | 1,311,701 | 1,311,701 | 1,311,701 | 5,246,802 |
| LLO - Supv Staffing Contract | 161,644 | 161,644 | 161,644 | 161,644 | 646,576 |
| MOS Dispatch | 54,305 | 54,305 | 54,305 | 54,305 | 217,221 |
| **Total Revenue** | 3,797,410 | 3,797,410 | 3,797,410 | 3,797,410 | 15,189,638 |
| NJMHC Staffing Expense | 1,240,946 | 1,240,946 | 1,240,946 | 1,240,946 | 4,963,782 |
| LLO - Staffing Contact Expense | 989,738 | 989,738 | 989,738 | 989,738 | 3,958,951 |
| LLO - Supv Staffing Contract Expense | 132,495 | 132,495 | 132,495 | 132,495 | 529,980 |
| Medical Billing | 113,488 | 113,488 | 113,488 | 113,488 | 453,952 |
| Uniforms | 12,000 | 12,000 | 12,000 | 12,000 | 48,000 |
| Medical Supplies | 28,838 | 28,838 | 28,838 | 28,838 | 115,351 |
| Fuel | 101,780 | 101,780 | 101,780 | 101,780 | 407,121 |
| Tolls | 16,963 | 16,963 | 16,963 | 16,963 | 67,854 |
| Mechanical Repairs | 97,598 | 97,598 | 97,598 | 97,598 | 390,390 |
| Communications | 30,420 | 30,420 | 30,420 | 30,420 | 121,680 |
| Dispatch | 130,888 | 130,888 | 130,888 | 130,888 | 523,553 |
| **Total COGS** | 2,895,153 | 2,895,153 | 2,895,153 | 2,895,153 | 11,580,613 |
| **Gross Profit** | 902,256 | 902,256 | 902,256 | 902,256 | 3,609,025 |
| **Gross Profit Margin** | 24% | 24% | 24% | 24% | |
| LLO - Management Costs | 143,089 | 143,089 | 143,089 | 143,089 | 572,356 |
| Rent / Lease | 16,500 | 16,500 | 16,500 | 16,500 | 66,000 |
| Insurance | 50,700 | 50,700 | 50,700 | 50,700 | 202,800 |
| Klestadt | - | - | - | - | - |
| Ombudsman | - | - | - | - | - |
| Trustee | - | - | - | - | - |
| Accountant - Current | 6,249 | 6,249 | 6,249 | 6,249 | 24,996 |
| Miscellaneous | - | - | - | - | - |
| **Total Expenses** | 216,538 | 216,538 | 216,538 | 216,538 | 866,152 |
| **Net Profit** | 685,718 | 685,718 | 685,718 | 685,718 | 2,742,874 |
| **Net Profit Percentage** | 18% | 18% | 18% | 18% | |
| **Cash Before Capital Expenses** | **994,786** | **1,277,602** | **1,869,082** | **2,554,800** | **2,554,800** |
| Class 4 - Strata | - | - | - | - | - |
| Class 5 - Vivian Capital | - | - | - | - | - |
| Class 6 -Employee Back Pay | - | - | - | - | - |
| Class 7 -Employee Back Pay | 141,717 | 296,750 | - | - | 438,467 |
| Payroll Taxes - Back Pay | - | - | - | - | - |
| Class 1 - IRS | - | - | - | - | - |
| Class 2(a) - NJDT | - | - | - | - | - |
| Class 2 (b) - NJDOL | - | - | - | - | - |
| Class 2 (C) - NJDWHC | - | - | - | - | - |
| Class 3 - SBA | - | - | - | - | - |
| PTC -1 IRS | - | - | - | - | - |
| PTC 2 - NJDT | - | - | - | - | - |
| PTC 3 - EDD CA | - | - | - | - | - |
| PTC 4 - CT DRS | - | - | - | - | - |
| Class 8 - Unsecured Creditors | 423,423 | - | - | - | 423,423 |
| **Exit Expenses Total** | **565,140** | **296,750** | **-** | **-** | **861,890** |
| **Ending Cash** | **794,395** | **1,183,364** | **1,869,082** | **2,554,800** | **2,554,800** |

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Totals |
|---|---|---|---|---|---|---|
| **NJMHC** | **2026** | **2027** | **2028** | **2029** | **2030** | |
| **Revenue** | | | | | | |
| Transportation Revenue | 3,709,440 | 5,566,810 | 7,161,074 | 8,228,975 | 9,079,040 | 33,745,339 |
| Prior Collections | 80,000 | - | - | - | - | 80,000 |
| Anticipated Collectible 1 | 1,854,720 | 2,783,405 | 3,580,537 | 4,114,488 | 4,539,520 | 16,872,669 |
| Anticipated Collectible 2 | 1,673,664 | 2,561,722 | 3,493,365 | 4,020,036 | 4,539,520 | 16,288,307 |
| **Total Anticipated Collections** | 3,608,384 | 5,345,126 | 7,073,902 | 8,134,524 | 9,079,040 | 33,240,976 |
| LLO - Staffing Contract | 2,398,050 | 4,336,200 | 4,444,605 | 4,889,066 | 5,246,802 | 21,314,723 |
| LLO - Supv Staffing Contract | 493,845 | 529,980 | 544,434 | 602,491 | 646,576 | 2,817,326 |
| MOS Dispatch | 170,409 | 195,971 | 217,221 | 217,221 | 217,221 | 1,018,042 |
| **Total Revenue** | 6,670,688 | 10,407,277 | 12,280,162 | 13,843,301 | 15,189,638 | 58,391,066 |
| | | | | | | |
| NJMHC Staffing Expense | 2,032,622 | 3,309,727 | 4,103,112 | 4,586,867 | 4,963,782 | 18,996,109 |
| LLO - Staffing Contact Expense | 1,798,538 | 3,252,150 | 3,338,874 | 3,689,022 | 3,958,951 | 16,037,534 |
| LLO - Supv Staffing Contract Expense | 408,545 | 438,438 | 449,279 | 493,845 | 529,980 | 2,320,086 |
| Medical Billing | 180,419 | 267,256 | 353,695 | 406,726 | 453,952 | 1,662,049 |
| Uniforms | 36,000 | 36,000 | 39,000 | 48,000 | 48,000 | 207,000 |
| Medical Supplies | 38,264 | 57,396 | 73,374 | 95,386 | 115,351 | 379,772 |
| Fuel | 135,050 | 202,575 | 258,968 | 336,658 | 407,121 | 1,340,371 |
| Tolls | 22,508 | 33,763 | 43,161 | 56,110 | 67,854 | 223,395 |
| Mechanical Repairs | 129,500 | 194,250 | 248,325 | 322,823 | 390,390 | 1,285,288 |
| Communications | 62,250 | 63,000 | 77,400 | 100,620 | 121,680 | 424,950 |
| Dispatch | 436,500 | 436,500 | 448,819 | 495,219 | 523,553 | 2,340,591 |
| **Total COGS** | 5,280,195 | 8,291,055 | 9,434,006 | 10,631,276 | 11,580,613 | 45,217,145 |
| | | | | | | |
| **Gross Profit** | 1,390,493 | 2,116,222 | 2,846,156 | 3,212,025 | 3,609,025 | 13,173,921 |
| Gross Profit Margin | | | | | | |
| | | | | | | |
| LLO - Management Costs | 345,930 | 471,250 | 543,546 | 559,853 | 572,356 | 2,492,934 |
| Rent / Lease | 66,000 | 66,000 | 66,000 | 66,000 | 66,000 | 330,000 |
| Insurance | 78,000 | 102,000 | 129,000 | 167,700 | 202,800 | 679,500 |
| Klestadt | 95,000 | 76,500 | 27,000 | - | - | 198,500 |
| Ombudsman | 4,167 | - | - | - | - | 4,167 |
| Trustee | 6,333 | 6,000 | 4,500 | - | - | 16,833 |
| Accountant - Current | 24,996 | 24,996 | 27,747 | 33,249 | 24,996 | 135,984 |
| Miscellaneous | - | - | - | - | - | - |
| **Total Expenses** | 620,426 | 746,746 | 797,793 | 826,802 | 866,152 | 3,857,918 |
| | | | | | | |
| **Net Profit** | 770,067 | 1,369,476 | 2,048,363 | 2,385,223 | 2,742,874 | 9,316,003 |
| Net Profit Percentage | - | - | - | - | - | - |
| | - | - | - | - | - | - |
| **Cash Before Capital Expenses** | 210,333 | 957,829 | 1,665,348 | 2,717,182 | 2,554,800 | 8,105,493 |
| | | | | | | |
| Class 4 - Strata | 69,499 | 92,665 | 92,665 | 69,499 | - | 324,327 |
| Class 5 - Vivian Capital | 10,182 | 15,936 | 15,936 | 11,952 | - | 54,005 |
| Class 6 -Employee Back Pay | 77,918 | - | - | - | - | 77,918 |
| Class 7 -Employee Back Pay | 60,341 | 115,579 | 135,267 | 362,020 | 438,467 | 1,111,674 |
| Payroll Taxes - Back Pay | 27,652 | 23,116 | 27,053 | 38,139 | - | 115,960 |
| Class 1 - IRS | 435,000 | 1,125,000 | 328,715 | - | - | 1,888,715 |
| Class 2(a) - NJDT | - | - | 310,897 | 103,632 | - | 414,529 |
| Class 2 (b) - NJDOL | - | - | - | 730,003 | - | 730,003 |
| Class 2 (C) - NJDWHC | - | - | - | 22,387 | - | 22,387 |
| Class 3 - SBA | - | - | - | 259,505 | - | 259,505 |
| PTC -1 IRS | - | - | 624,180 | - | - | 624,180 |
| PTC 2 - NJDT | - | - | - | 88,094 | - | 88,094 |
| PTC 3 - EDD CA | - | - | - | 2,809 | - | 2,809 |
| PTC 4 - CT DRS | - | - | - | 1,007 | - | 1,007 |
| Class 8 - Unsecured Creditors | - | - | - | 423,423 | 423,423 | 846,846 |
| **Exit Expenses Total** | 680,592 | 1,372,295 | 1,533,114 | 2,112,470 | 861,890 | 6,560,362 |
| | | | | | | |
| **Ending Cash** | 136,883 | 134,064 | 401,064 | 673,817 | 2,554,800 | 3,900,629 |

**5 Year Operating Projections**
**Specific Operational Assumptions**

First Month (January 2026)

- Four (4) 12 Hour Units, requiring 3 vehicles in service.
- An additional Nighttime unit will be added during the month requiring additional vehicles needed to 4
- On a weekly basis, this averages out to 24.2 transports per day or 169.4 per week over 420 Operational Hours.

Second and Third Months (February & March 2026)

- An additional 12-Hour Day time unit will be added, increasing the vehicle needs to 5
- On a weekly basis, this averages out to 29.4 transports per day or 205.8 per week over 504 Operational Hours.

Year 1 Second and Third Quarters

- No Additional Changes unless new contracts necessitate additional units.

Year 1 Fourth Quarter

- An additional 12-Hour Day time unit will be added, increasing the vehicle needs to 6
- On a weekly basis, this averages out to 34.6 transports per day or 242.2 per week over 588 Operational Hours.

Year 2 First Quarter

- One additional 12 Hour Nighttime unit will be added, keeping the vehicle needs at 7.
- On a weekly basis, this averages out to 38.9 transports per day or 272.3 per week over 672 Operational Hours.

Year 2 Second and Third Quarter

- One additional 12-Hour Day time units will be added, increasing the vehicle needs to 8.
- On a weekly basis, this averages out to 44.1 transports per day or 308.7 per week over 756 Operational Hours.

Year 2 Fourth Quarter Through Year 3

- Two additional 12 Hour Day Time Units will be added, increasing the vehicle needs to 10.
- On a weekly basis, this averages out to 53.6 transports per day or 375.2 per week over 924 hours

**<u>Overall Operational Assumptions</u>**

The plan gradually accounts for an increase from 3 to 10 vehicles over 3 years.  The volume increases from a weekly transport volume of 170 to 375. The Unit Hourly Utilization remains consistent at 0.4 transports per hour / per unit.

Non-emergency transport volume, such as discharges, is not factored into the budgeting as they can be used as additional filler on the slower emergency days.  They have a lower blended payor rate but can be used as supplemental income to decrease down time.

The projections factor higher than averaged COGS.  The fuel lines have been based on the gas prices seen in the past few years.  The mechanical repair budget was also increased over past expectations to account for the aging vehicles and raising costs.

The volume and number of units being proposed in this budget is close to half of what has been run in the past.  This allows for growth, while still accounting for the issues leading to these Chapter 11 Cases. Being that the Debtors are not a start-up companies in the conventional way, the Debtors also do not have those costs associated.

# <u>Exhibit B</u>

**EXHIBIT "B"**

**ASSUMPTION OF EXECUTORY CONTRACTS**

1.    Emergency and non-emergency services agreement with Bergen New Bridge Medical Center.

2.    Emergency and non-emergency services agreement with Christian HealthCare Center.

3.    Emergency and non-emergency services agreement with Saint Michaels Medical Center.

4.    Real Estate Lease Agreement with Zohar Zisapel Properties, Inc.

# Exhibit C

**NJ Mobile HealthCare Liquidation Analysis**

| Item # | Description | Liquidation Value |
|---|---|---|
| 1 | Miscellaneous office furniture | 2,500.00 |
| 2 | Office equipment including all computer equipment, communications systems equipment, software, phones EMS communications Equipment | 10,000.00 |
| 3 | Misc. Basic life support and ambulance equipment contained in each ambulance | 85,000.00 |
| 4 | Ford 2013 Type II Ambulance. Vehicle ID 49-40 | 2,500.00 |
| 5 | Ford 2012 Type II Ambulance. Vehicle ID 49-41 | 2,500.00 |
| 6 | Ford 2014 Type II Ambulance. Vehicle ID 49-42 | 14,000.00 |
| 7 | Ford 2007 Supervisor Vehicle. Vehicle ID 55-12 | 1,000.00 |
| 8 | Chevy 2009 Type III Ambulance. Vehicle ID 55-56. | 15,000.00 |
| 9 | Ford 2014 Type III Ambulance. Vehicle ID 55-50 | 5,000.00 |
| 10 | Chevy 2013 Type I Ambulance. Vehicle ID 55-53. | 18,000.00 |
| 11 | International 1994 Mobile Command Bus Vehicle ID 56-GC | 5,000.00 |
| 12 | Gulf Cart Vehicle ID 56-GC | 5,000.00 |
| 13 | Flatbed Golf Cart Trailer. Vehicle ID 56-GCT | 700.00 |
| 14 | Diamond Cargo Trailer. Vehicle ID 56-MCRU | 1,500.00 |