**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**
Tracy L. Klestadt
Andrew C. Brown (admitted *pro hac vice*)
286 Madison Avenue, 11th Floor
New York, NY 10017-6368
Tel: (212) 972-3000
Fax: (212) 972-2245

*Attorneys to the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NJ MOBILE HEALTH CARE LLC, *et al.*[1], | (Subchapter V) |
| | Case No. 24-16239 (JKS) |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION FOR AN ORDER DISMISSING**
**<u>THE CHAPTER 11 CASES AND OTHER RELATED RELIEF</u>**

**TO THE HONORABLE JOHN K. SHERWOOD**
**UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors-in-possession (together, the "<u>Debtors</u>") hereby submit this motion (this "<u>Motion</u>")[2] for entry of an order, in substantially the same form as that attached hereto as **<u>Exhibit "A"</u>** (the "<u>Proposed Order</u>"), dismissing the above-captioned jointly administered Chapter 11 cases (collectively, the "<u>Chapter 11 Cases</u>") and respectfully represent as follows:

[1] The Debtors herein and the last four digits of their respective tax identification number are: (i) NJ Mobile Health Care LLC (9666), (ii) Lime Line Operations LLC (8248), (iii) SSME Services LLC (4127). The Debtors' principal place of business is 575 Corporate Drive, Suite 525, Mahwah, New Jersey 07430.
[2] Capitalized terms used but not immediately defined shall have the meanings ascribed to them elsewhere in the Motion.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief requested herein is 11 U.S.C. § 1112.

## BACKGROUND

### A. General Background

4. On June 20, 2024, each of the Debtors filed voluntary petitions for relief pursuant to Subchapter V of Chapter 11 the Bankruptcy Code commencing the above-captioned Chapter 11 cases (collectively, the "Chapter 11 Cases") in the United States Bankruptcy Court for the District of New Jersey (the "Court").

5. The Debtors remain in possession of their assets and continue to operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6. No trustee or committee, with the exception of the appointment of a Subchapter V trustee, has been appointed in the Chapter 11 Cases.

### B. The Debtors' Businesses and Events Leading to the Chapter 11 Cases

7. Debtor NJ Mobile Health Care LLC ("NJMHC") was formed in 2014 and is licensed by the New Jersey Department of Health Office of Emergency Medical Services to serve as an emergency medical services provider at both the Basic Life Support (BLS) and Specialty Care Transfer Unit (SCTU) level. Over the years, NJMHC has provided both emergency and non-

emergency ambulance services to both its contracted and "call for service" partners, including both healthcare facilities and municipalities.

8. Following formation, NJMHC gradually expanded its range of services beyond its primary emergency and non-emergency ambulance services to include both training and educational services, including both in-service employee training and external training to emergency medical technicians (EMTs) and other first responders. Unfortunately, the residual impact of the COVID-19 Pandemic, industry headwinds, and certain issues with third-party billing providers led to significant downsizing of the Debtors' operations causing a significant decrease in the Debtors' ability to generate revenue in the lead up to and following commencement of the Chapter 11 Cases.

9. Several significant contributing factors impacted the Debtors' financial condition. As indicated, the residual impact and challenges posed by the COVID-19 Pandemic led to a detrimental impact on the Debtors' operations, including both an increase in cost and decrease in availability of medical supplies and automotive parts as well as an increased capital costs of obtaining new equipment and vehicles to meet increased "call-for service" demand. In addition to increased operating costs, the Debtors also had to contend with fluctuating and generally diminishing reimbursement and collection rates on the receivables generated by the jobs that have been serviced.

10. As billing and collection of receivables in the medical industry is a generally complicated endeavor, the Debtors historically outsourced the logistics of receivable collections to third-party billing companies. In or around October of 2021 the Debtors terminated the relationship with their longstanding third-party billing company. The Debtors' transition from that third-party billing provider to their current third-party billing provider stretched over a longer

period of time than anticipated and had a significantly detrimental impact on the Debtors' operations, including a significant decline in the Debtors' ability to fully realize on the receivables generated by their operations.

**C. Significant Events During the Chapter 11 Cases**

11. On June 27, 2024, Mark Politan was appointed the Subchapter V Trustee in the Debtors' Chapter 11 Cases. On August 9, 2024, the Court entered an order directing the Joint Administration of the Debtors' Chapter 11 Cases. On August 13, 2024, Joseph Tomaino was appointed as the Patient Care Ombudsman.

12. On September 18, 2024, the Debtors filed their Small Business Debtors' Plan of Reorganization [Docket No. 56]. On November 15, 2024, the Debtors filed their Small Business Debtors' First Amended Plan of Reorganization [Docket No. 89]. On January 28, 2025, the Debtors filed their Small Business Debtors' Second Amended Plan of Reorganization (the "Second Amended Plan") [Docket No. 111]. On October 14, 2025, the Debtors field their Small Business Debtors' Third Amended Plan of Reorganization (the "Third Amended Plan") [Docket No. 170].

13. Following commencement of the Chapter 11 Cases, the Debtors explored the propriety of potential infusions of capital from third parties, a potential sale of the Debtors' operating assets, or taking on post-petition debtor-in-possession financing. These discussions led to a previous agreement by and between NJMHC and Tri-State Medical ("Tri-State") by which Tri-State was to provide NHMJC with staffing and management services that would enable NJMHC to expand and redeploy its operations. *See* Second Amended Plan, § 2.5. To that end, NJMHC and Tri-State entered that certain Supplemental Staffing Agreement (the "Tri-State Staffing Agreement"). *See* Second Amended Plan, Exhibit "D". Despite its execution in September of 2024, services under the Tri-State Staffing Agreement commenced in January 2025.

Unfortunately, due to certain disagreements between NJMHC and Tri-State the Tri-State Staffing Agreement was terminated on or around April of 2025 and lead to certain subsequent motion practice in the Chapter 11 Cases, which was ultimately resolved pursuant to the terms of that certain *Consent Order Resolving Motion to Compel Debtor to Make Payment of Administrative Expense Claim by Date Certain, or Alternatively to Conver Debtor's Case to a Case Under Chapter 7 of the Bankruptcy Code*. *See* Docket Nos. 145, 155, 161

14. In addition, while working through potential strategic restricting options the Debtors explored the sale of certain of their vehicles to raise additional post-petition working capital that would provide additional funding for the Debtors' operations under the Plan. To that end, the Debtors previously filed two motions to sell certain surplus ambulances, which motions were subsequently granted by the Court. *See* Docket Nos. 82, 83, 90, 91, 97, 108[3].

**D. Tax Related Issues**

15. In addition to the economic strains outlined above, the Debtors also faced certain tax-related issues in the lead up to the Chapter 11 Cases. As outlined in the Third Amended Plan, the Debtors collectively owe the Internal Revenue Service approximately $2.5 million in back taxes, of which approximately $1.8 million is secured and approximately $624,179.97 is subject to priority status under Section 507(a)(8) of the Bankruptcy Code (collectively, the "Tax Debt").

16. Further, following commencement of the Chapter 11 Cases the Debtors' principal Mr. Louis V. Greco, III, pleaded guilty to tax evasion arising out of the Debtors' incurrence of the

[3] Following entry of that certain *Order, Pursuant to 11 U.S.C. §§ 105 and 363, Approving the Debtors' Sale of Obe Ambulance Free and Clear of All Liens, Claims, and Encumbrances* (the "Sale Order") [Docket No. 108], NJMHC, Tri-State, and the initial purchase of the ambulance in question under the Sale Order entered that certain Assignment and Assumption Agreement and Novation Agreement, each dated January 15, 2025, whereby the initial purchaser assigned its rights to purchase the Ambulance in connection with the Sale Order to Tri-State. *See Declaration of Louis V. Greco, III, in Response to that Certain Motion of Tri-State Medical Holdings LLC to Compel Debtor to Make Payment of Administrative Expense Claim by Date Certain, or Alternatively to Convert Debtor's Case to a Case Under Chapter 7 of the Bankruptcy Code* [Docket No. 155], ¶¶ 11-18.

collective Tax Debt. As described below, such developments caused the exploration of the potential formation of a non-profit organization and related board of directors that would step into the management role in lieu of Mr. Greco's continued management of the Debtors.

## RELIEF REQUESTED

17. By this Motion, the Debtors respectfully request the Court to dismiss the Chapter 11 Cases pursuant to Section 1112(b) of the Bankruptcy Code on the terms set forth herein.

## LEGAL ARGUMENT

### A. The Debtors' Chapter 11 Cases Should be Dismissed for "Cause" Under Section 1112(b) of the Bankruptcy Code

18. Section 1112(b) of the Bankruptcy Code requires a court to dismiss (or convert) a case if a party in interest establishes "cause," absent "unusual circumstances" specifically identified by the Court that establish that the requested dismissal (or conversion) is not in the best interests of the creditors and the estate. *See* 11 U.S.C. § 1112(b)(l) and (2).

19. Specifically, Section 1112(b) of the Bankruptcy Code provides, in pertinent part, as follows:

> (1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.
>
> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the Debtors or any other party in interest establishes that—
>
> > (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 112l(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for converting or dismissing the case include an act or omission of the Debtors other than under paragraph (4)(A)-

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C § 1112(b)(1) and (2).

20. Accordingly, where a movant establishes "cause" under Section 1112(b)(4)(A), a court must dismiss (or convert) the case even if there are "unusual circumstances" that might otherwise weigh against dismissal (or conversion). *See* 11 U.S.C. § 1112(b)(l) and (2)(B).

21. Moreover, the list of grounds for dismissal of a Chapter 11 case in Section 1112(b) of the Bankruptcy Code is non-exhaustive. *See, e.g., Frieouf v. US*, 938 F.2d 1099, 1102 (10th Cir. 1991); *In re Camden Ordinance Mfg. Co. of Arkansas, Inc.*, 245 B.R. 794, 799 (E.D. Pa. 2000). While no longer listed as an example of "cause" for dismissal under Section 1112(b), dismissal of a Chapter 11 case is nevertheless appropriate where the court finds that a feasible plan is not possible. *In re 3 Ram, Inc.*, 343 B.R. 113, 117-18 (Bankr. E.D. Pa. 2006) (citations omitted).

22. As indicated, in or around the beginning of April 2026, the Debtors' principal Mr. Greco pleaded guilty to tax evasion arising out of the Debtors' incurrence of the collective Tax Debt. In connection with this, the Debtors had been exploring the potential formation of a non-profit organization and related board of directors that would step into the management role of the Debtors to replace Mr. Greco. Such process would be facilitated, in part, by the non-profit's purchase of the equity interest in NJMHC thereby taking out Mr. Greco's ownership interest[4]. While having the non-profit's board of directors step in to take on management of the Debtors, it

[4] As outlined in the Third Amended Plan, NJMHC is owed ninety-nine percent (99%) in part by NJ EMS Ventures LLC and one percent (1%) in part by NJ Emergencies Made Simple, LLC, which are in turn owned by Mr. Greco and Mr. Christopher Greco, respectively.

was the Debtors' intention to maintain the employment of Mr. Greco in an operational type capacity. Given his involvement in NJMHC's operations since its inception in 2014, all the Debtors' material customer and vendor relationships flow through Mr. Greco.

23. Such structure was to be outlined and put before the Court and parties-in-interest via a further amended proposed plan of reorganization. While discussing this potential pathway with certain parties-in-interest, including the Office of the United States Trustee (the "UST"), significant concern was raised in connection with the continued involvement of Mr. Greco in the go forward operations of the Debtors in any manner and the Debtors were advised that any proposed plan contemplating the same would be met with objection(s).

24. As indicated, it is respectfully the Debtors' position that given Mr. Greco's central role in the maintenance of the Debtors' key customer and vendor relationship, terminating his involvement in any go forward operations will also mean termination of the Debtors' operations permanently. Stated differently, without Mr. Greco's involvement in go-forward operations the Debtors will not have any operations to reorganize and are consequently unable to put forth a feasible plan for parties' and the Court's consideration.

25. The Debtors now seek to avoid what they understand would be a contested plan process and explore their restructuring options outside of the Bankruptcy process. Accordingly, the Debtors respectfully submit that they have met their burden of proof to show that "cause" exists to dismiss the Chapter 11 Cases under Section 1112(b) of the Bankruptcy Code[5].

---

[5] In addition to "cause" under section 1112(b) of the Bankruptcy Code, Section 305(a) permits dismissal of a case if "the interests of creditors and the Debtors would be better served by such dismissal . . ." 11 U.S.C. § 305(a)(1). *See, e.g., In re Monitor Single Lift I Ltd.*, 381 B.R. 455, 462 (Bankr. S.D.N.Y. 2008) ("The courts that have construed §305(a)(1) are in general agreement that . . . dismissal is appropriate under § 305(a)(1) only in the situation where the court finds that both 'creditors and the Debtors' would be 'better served' by a dismissal.") (quoting *In re Eastman*, 188 B.R. 621, 624 (9th Cir. BAP 1995)). The Debtors submit that dismissal of the Chapter 11 Cases is warranted under Section 305(a) of the Bankruptcy Code for the same reasons that "cause" exists to dismiss the Chapter 11 Cases pursuant to section 1112(b).

**B. Dismissal is in the Best Interest of the Debtors' Creditors and Estates**

26. Once a court determines that cause exists to dismiss a debtor's Chapter 11 case under Section 1112(b), the court must evaluate whether dismissal is in the best interests of the debtor's creditors and its estate. *See, e.g., Rollex Corp. v. Associated Materials (In re Superior Siding & Window)*, 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court is required to consider this second question of whether to dismiss or convert"). Here, a variety of factors demonstrate that it is in the best interest of the Debtors' creditors and their estates to dismiss these Chapter 11 Cases.

27. First, the Debtors seek to explore their restructuring options outside of the Bankruptcy process. As indicated, the Debtors seek to establish a non-profit organization and related board of directors that would step into the management role to replace Mr. Greco and to buy out Mr. Greco's ownership interest. It is intended that consummation of this proposed path will lead to the continued operations of the Debtors, thereby generating additional revenue which the Debtors' creditors can look to for potential satisfaction of their respective claims. Should the Chapter 11 Cases be converted those under Chapter 7 there would be an immediate cessation and shuttering of the Debtors operations upon the appointment of a Chapter 7 Trustee.

28. Second, as indicated, the Debtors collectively owe the Internal Revenue Service approximately $2.5 million in back taxes, of which approximately $1.8 million is secured and approximately $624,179.97 is subject to priority status under Section 507(a)(8) of the Bankruptcy Code. Consequently, any assets marshaled for distribution by a Chapter 7 Trustee will all be directed towards the paydown of the Tax Debt, leaving the Debtors' general unsecured creditors with no hope of a recovery. Indeed, to that end, appointment of a Chapter 7 Trustee will also lead

to another layer of administrative fees to be satisfied before general unsecured creditors see any potential form of distribution.

29. Finally, the Debtors creditors will not be prejudiced by the dismissal. Because the Chapter 11 Cases are being dismissed, the Debtors will not receive a discharge. Accordingly, each of the Debtors' pre-petition creditors are free to pursue any of their applicable pre-petition rights as against the Debtors.

30. Balancing the equities, the Debtors submit that the Debtors' creditors and the estate will be better served if the Chapter 11 Cases are dismissed.

**C. Effects of Dismissal on Property of the Debtors' Estates and Prior Orders**

31. The proposed dismissal shall be without prejudice and shall, in accordance with 11 U.S.C. § 349, revest the property of the estates in the applicable Debtors.

32. Dismissal will also not affect prior orders entered by the Court in this case, where third parties have in good faith relied therein.

33. As indicated, because the Chapter 11 Cases are being dismissed, the Debtors will not receive a discharge. Accordingly, each of the Debtors' pre-petition creditors will maintain the same rights they maintained as of the Petition Date and will be free to pursue any of their applicable pre-petition rights as against the applicable Debtors.

**WAIVER OF MEMORANDUM OF LAW**

34. Because the legal basis upon which the Debtors rely is incorporated herein and the Motion does not raise any novel issues of law, the Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3).

**NO PRIOR REQUEST**

35. No previous motion for the relief sought herein has been made to this or to any other court.

**NOTICE**

36. Pursuant to Rule 2002 of the Bankruptcy Rules, the Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee for the District of New Jersey, (b) the Subchapter V Trustee, (c) all secured and unsecured creditors, (d) the Office of the Attorney General for New Jersey, (e) the United States Attorney's Office for the District of New Jersey, (f) the Internal Revenue Service, and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. Considering the nature of the relief requested, no other or further notice need be given.

**CONCLUSION**

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as is just and proper.

Dated: New York, New York
August 4, 2026

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

By: */s/ Tracy L. Klestadt*
Tracy L. Klestadt
Andrew C. Brown (admitted *pro hac vice*)
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: tklestadt@klestadt.com
abrown@klestadt.com

*Attorneys for the Debtors and Debtors-in-Possession*